No. 20,527.

BESSIE E. BRYANT, *Appellant,* v. WATSON BEESON FLANNER ET AL., *Appellees.*

SYLLABUS BY THE COURT.

WILL—*Interpretation—Intention of Testator—No Estate Tail Created.* The rule applied that in the interpretation of a will to ascertain the intention of the testator, the whole will should be considered and effect given to every part, if consistent with a general purpose apparent from the nature of the instrument; and held, that a single clause of a single item of a will, containing words which, considered alone, would create an estate tail, and would nullify the remainder of the item and several other items of the will, was not intended by the testator to have that effect.

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed January 6, 1917. Affirmed.

*J. W. Parker,* and *S. D. Scott,* both of Olathe, for the appellant.

*C. L. Randall,* and *W. D. Morrison,* both of Olathe, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one for the interpretation of a

Bryant v. Flanner.

will and for possession and partition of real estate affected by the will. The plaintiff was defeated and appeals.

The will was the will of William Flanner. It was executed in September, 1886, and the material portions follow:

"Item 2nd: I will and bequeath all my personal property that may remain after paying all my just debts and the expenses of administration and funeral expenses absolutely to my beloved wife Elizabeth Ross Flanner to be used by her as she may desire.

"Item 3rd: I hereby desire and require that all my real estate be kept intact and not to be sold but to descend to my children and their bodily heirs, each to have share and share alike in the distribution of said real estate to my grandchildren.

"Item 4th: I further will and bequeath unto my wife, Elizabeth Ross Flanner, all the proceeds, rents and profits from said real estate to be used by her and for her just as she may desire during her natural life time.

"Item 5th: I will and bequeath to my two sons Edwin Forrest Flanner and Watson Beeson Flanner, all the use, rents, profits and proceeds of my home farm being the southwest quarter of section 16, township 13, range 25, after the death of my beloved wife, and to have the same during their natural life and further to my son Halley Ross Flanner all the proceeds, rents and profits (after the death of my wife) to the south half of the southeast quarter of section 8, township 13, range 25, and to have the same during his life time.

"Item 6th: I desire that if I shall own at the time of my death any town property or other land, I hereby empower my executor hereinafter named to sell and convey the same to the purchaser thereof and the proceeds received from the sale of said property to be equally divided between my children."

William Flanner died in the year 1889, leaving a widow, Elizabeth Ross Flanner, three sons, Watson Beeson Flanner, Halley Ross Flanner, and Edwin Forrest Flanner, and a daughter, Ida K. Bryant. The will was probated and in due time the estate was settled and the executors were discharged. The widow took possession of the real estate under the fourth item of the will and occupied it until her death in 1909. Possession was then taken by the persons named in the fifth item of the will and in accordance with its provisions. Edwin Forrest Flanner died intestate in 1913, leaving no widow and no children. His brothers have since continued in possession of their respective tracts. The living sons and the daughter, Ida K. Bryant, have children, grandchildren of the testator. The testator named all of his children in his will except his

daughter, Ida K. Bryant. In the year 1914 she concluded that she and her brothers had been given estates tail by the third item of the will. To bar reversion, she made a conveyance to Bessie E. Bryant, who brings the action. The district court made the following finding:

"I find that the intention of William Flanner was to convey, first, a life estate in the land in question to Elizabeth Ross Flanner, his widow, and after her death a life estate in the eighty acres described to Halley Ross Flanner, and a life estate in the quarter section described to Watson Beeson Flanner and Edwin Forrest Flanner jointly, and that the said lands should not be sold until the termination of the life tenancies provided for in the will, and that at the termination of the life tenancies the land should pass share and share alike to the grandchildren of William Flanner."

The doubt respecting the testator's intention is created by the peculiar phraseology of the third item of the will. The plaintiff fixes attention on the words "descend to my children and their bodily heirs," and eliminates everything else pertaining to the devise of real estate by an argument the trend of which is indicated by the following extracts from her brief:

"It is clear that this clause gave an estate tail to all of the children, and that Mrs. Bryant could convey a fee simple title which would bar 'herself, her issue, born and unborn, and her father's reversion.' (*Ewing v. Nesbitt*, 88 Kan. 708, 717, 129 Pac. 1131.) . . . The clause 'be kept intact and not be sold' being unlimited, is of course, void.

"The last clause of item three 'each to have share and share alike in the distribution of said real estate to my grandchildren' contains no words of devise and merely relates to the shares each shall take. Mr. Flanner evidently misunderstood the legal effect of his words 'descend to my children and their bodily heirs.' To whom the word 'each' refers, whether his own children or his grandchildren, or to both, is a matter purely of conjecture; the will throws no light upon it.

"The whole clause is, in fact, meaningless when taken in connection with what precedes it. The contention of defendants that this clause means and is a bequest to the grandchildren is not tenable. There are no words of bequest in this last clause. Defendants' construction is flatly contradictory to the phrase 'descend to my children and their bodily heirs.'

"Since item three gave to his children, under *Ewing v. Nesbitt*, supra, such title as could be conveyed, the subsequent attempt to reduce the title by giving a life estate to his widow in item four, and to his sons in item fifth, is void. (*McNutt v. McComb*, 61 Kan. 25, 58 Pac. 965.) . . . The language of the last clause 'in the distribution of said real estate to my grandchildren' in its legal effect did not change the title, but if operative

at all, changed the holders from tenants in common to holders in severalty.

"But we hold that this last clause is void for uncertainty."

The argument applies in a logical way declared principles of interpretation, and appears to be flawless. But the law relating to the interpretation of wills, and particularly the doctrine of the case of *McNutt v. McComb*, supra, would seem to be quite arbitrary if it required the court to suffer a single phrase of a single item of a will to dominate the whole instrument with such arrogance and intolerance. The testator said he desired and required that all his real estate should be kept intact and should not be sold. What did he intend? The plaintiff answers, candidly enough, with one word—void. The testator remembered his wife and devoted an entire item of the will to a provision for her benefit. What did he intend? The plaintiff answers—void. The wife was to have all the proceeds, rents and profits of the real estate, to be used by her and for her, just as she might desire, during her natural life. After that the testator said he willed that two sons should have the home farm, and another son should have the other farm, during their lives. What did he intend? The plaintiff answers—void. The testator spoke about a distribution of his real estate to his grandchildren, and said something about each to have share and share alike. What did he intend? The plaintiff answers—void. So all there is left of three items of the will, disposing in fairly elaborate fashion of all the testator's land, is the expression, "I hereby desire and require that all my real estate . . . descend to my children and their bodily heirs." This expression standing alone, and accorded the technical meaning which the ancient common law attached to it, would give each of the testator's children an estate tail, an estate seldom found in wills or deeds of Kansas real estate, and not very well understood except by lawyers skilled in the intricacies of the common law. The testator's widow and sons, reading the will, did not so understand it, and the testator's daughter apparently did not appreciate the potentiality of the words under consideration until after the decision by this court of the case of *Ewing v. Nesbitt*, 88 Kan. 708, 129 Pac. 1131. That case was decided nearly a quarter of a century after the testator's death, and

somehow the feeling can not be suppressed that the interpretation for which the plaintiff contends misses what the testator had in mind.

How shall we know what the testator intended, for that was his will? There are rules and rules for the interpretation of wills. A history of these rules would disclose that they reflected the habits and types of mind of the various periods in which they were promulgated. Just as the human mind passed through a stage in which there could be no worship unless it conformed to a prescribed ritual, so the law and its administration passed through a stage of intense formalism. There could be no right unless there was a writ which fitted it. The meaning of a deed was ascertained, not by all that might be found within the four corners of the instrument, but by the ceremonial procession of conventional clauses, and the same mental bias prevailed in the interpretation of wills. Much of this has been outgrown, and common sense methods are now more in favor. Certain rules, as that a gift or devise in a will can not be cut down by a subsequent provision, have less authority and are applied with greater discrimination than formerly. Other rules, as that the whole will should be considered and effect given to every part if consistent with a general purpose apparent from the entire instrument, are more depended on.

In the case of *Ewing v. Nesbitt,* supra, the will as a whole left no doubt that the testator used the words essential to the creation of an estate tail with full appreciation of their legal meaning and effect:

"The fourth paragraph reads as follows:

" 'Fourth: I will and bequeath to my daughter, Mary A. Nesbitt, *nee* Ewing, and to the heirs of her body, the south half (½) of the northwest quarter (¼) of section No. twenty-one (21), township thirteen (13), of range twenty-four (24), in Johnson county, Kansas.'

"Devises using the same language were made to the testator's other children, four in number. Besides these the will contained four other devises, which were expressly stated to be 'free and clear of all entailment,' thus clearly indicating the intention of the testator to create estates tail by the phraseology employed in paragraph 4 and those like it." (p. 708.)

In this case the context and the subsequent items of the will indicate that the words "descend to my children and their

bodily heirs" were not expressive of such an intention, because if they were the remainder of the item in which they were embedded and the other items of the will were nugatory. Is there a consistent purpose discoverable from the will as a whole which will give effect to all the various parts? If the third item be read after the fifth item, there is little difficulty. Item four gave a life estate to the testator's wife. Item five gave a remainder to his sons for their lives. Item three gave the remainder in fee to the testator's grandchildren, who in the final distribution should have share and share alike. Bodily heirs of the testator's children were the equivalent in his thought to grandchildren, and in giving the fee of the real estate to his grandchildren he made it "descend" to his children, and then to his grandchildren, intact and unalienated.

The finding of the district court is approved and the judgment of the district court is affirmed.