No. 28,489.

Frank Somers, *Appellee*, v. Magdelina O'Brien, The Farmers and Merchants State Bank of Tonganoxie, E. F. Bollinger, as Receiver, etc., *Appellees;* S. J. McNaughton, The Tonganoxie State Bank et al., *Appellants.*

(281 Pac. 888.)

Opinion filed November 9, 1929.

*S. J. McNaughton* and *M. N. McNaughton,* both of Leavenworth, for the appellants.

*W. W. Hooper* and *Benjamin F. Endres,* both of Leavenworth, for appellees Magdelina O'Brien, W. J. O'Brien and O'Brien minors; *Joseph J. Dawes* and *David W. Flynn,* both of Leavenworth, for appellee Frank Somers.

The opinion of the court was delivered by

Dawson, J.: This was an action to foreclose a mortgage on a

quarter section of land given to secure the payment of two promissory notes, one for $6,500 held by the appellee, and one for $1,500 held by the appellants. Money judgments were awarded in favor of appellee and appellants against the makers and other parties bound on the notes, but foreclosure of the mortgage was denied on the ground that the title of the mortgagors was not of a character which they could encumber. The trial court's findings of fact leading to that conclusion occupy many pages, which may be summarized as follows:

In 1916 Elizabeth Binder owned a quarter section of Leavenworth county land which she and her husband desired to devote to the use of their daughter Magdelina in some fashion so as to prevent its seizure for her debts, to make a provision for her during her lifetime, to devolve on her issue at her death, and to serve "as a barrier to any spendthrift tendencies on the part of herself and her husband." To that end Elizabeth and her husband, on July 25, 1916, executed a deed conveying the premises to Magdelina, with these recitals:

The first parties "grant, bargain, sell, remise, alien, convey and confirm" unto Magdelina—

"As trustee for herself, the use during her natural life, subject to the conditions and restrictions hereinafter set forth, and at her death in fee simple unto the issue of her body absolutely and forever, all of the following-described . . . parcel of land. . . .

"To have and to hold and to use said premises, the tract of land aforesaid, with the hereditaments and appurtenances thereof unto said Magdelina O'Brien as trustee for herself, during her natural life, and at her death in fee simple unto the issue of her body absolutely and forever, provided, that any interest or title thereby conveyed to said Magdelina O'Brien shall not be subject to alienation by her, nor liable for her debts or those of her husband, either on execution, attachment or otherwise. This conveyance is intended as a humane provision of mine to keep said Magdelina O'Brien from absolute want or becoming a public charge during her lifetime, and at her death to go to the issue of her body, absolutely, and as barrier to any spendthrift tendencies on the part of herself and her husband."

Pursuant to this conveyance Magdelina and her husband took and still hold possession of the property and have paid the taxes thereon. At the time the deed was executed Magdelina had two and now has four living children.

On September 12, 1921, five years after the execution and delivery of the deed, Magdelina was indebted to the Tonganoxie State Bank in the sum of $6,000 and on that day she filed a voluntary petition in bankruptcy. This quarter section under discussion was

listed as a part of her bankrupt estate. She had practically no other property. On December 5, 1921, she received her discharge in bankruptcy. A petition in her behalf was filed before the federal referee in bankruptcy, setting up the deed from her mother and claiming that the property conveyed therein was not subject to be taken for her debts, and requesting the referee to "determine her title thereto and adjudge that the same was not subject to be taken for the payment of her debts." The referee required the trustee in bankruptcy to answer, which he did with appropriate traverses and by alleging that the bankrupt held the title in fee simple and that the property was subject to the payment of Magdelina's debts and was part of the bankrupt estate. Both parties filed motions for judgment; that of the bankrupt was denied; and that of the trustee was sustained. On April 2, 1923, judgment was entered to the same effect; and the property was sold by the trustee in bankruptcy to R. A. Phenicie for $6,475, $6,000 of which went to satisfy the claim of the Tonganoxie State Bank and the balance to pay fees. On the same day the trustee's deed conveying the property was executed and delivered to R. A. Phenicie; on the same day for a nominal consideration he conveyed the premises to Magdelina; and on the same day she and her husband executed the mortgage on the property to the Tonganoxie State Bank for $8,000 to secure the two notes for $6,000 and $1,500 which figure in this lawsuit. The consideration for the two notes aggregating $8,000 was "about $500 and some indebtedness of Magdelina O'Brien and [her husband] prior to said adjudication in bankruptcy."

Findings Nos. 20 and 21 read:

"20. All of the orders and decrees made by the referee in bankruptcy proceedings of Magdelina O'Brien were procured and obtained by agreement between Bert Harmon, the trustee, Magdelina O'Brien, the bankrupt, and her creditors, all of said parties applying therefor and consenting thereto, for the purpose of getting the title to said premises in said Magdalina O'Brien so that she could use the same to pay the creditors of herself and her husband, W. J. O'Brien.

"21. Prior to the execution and delivery of said deed set out in finding No. 2, above, said John Binder employed William P. Wettig, a lawyer in Leavenworth, Kansas, to prepare said deed, telling said Wettig that he, said Binder, and his wife desired to make a conveyance of the land in question which would give their daughter, Magdelina O'Brien, the use of said land during her life, and a fee title absolutely to her children forever; also prohibiting her from conveying her interest in the land or in anywise incumbering it, and preventing it from becoming liable or being taken for her debts or the debts of her husband. That he desired this done for the purpose of providing for his

daughter during her life in order that she should not want or become a public charge, and that in pursuance of such instructions said William P. Wettig prepared the deed as set out in finding No. 2 above, and the same was duly executed by said Elizabeth Binder and John Binder, her husband, as stated in said finding No. 2."

One other fact not mentioned in the findings but which may have a bearing on this case should also be noted: On March 31, 1923, Elizabeth Binder, then a widow, made an unqualified quitclaim deed of the premises to Magdelina.

The trial court's conclusions of law, in part, read:

"3. Because of the conditions and restrictions contained in the deed set out in finding No. 2 above, the bankruptcy proceedings *in re* Magdelina O'Brien, bankrupt, did not divest the said Magdelina O'Brien of any title or interest which she had in said real estate described in said deed, and the deed of the trustee in said proceedings conveyed nothing to said R. A. Phenicie, and he had no title or interest in said land when he executed the deed purporting to convey said land to said Magdelina O'Brien on the 2d day of April, 1923.

"4. Because of the conditions and restrictions contained in the deed set out in finding No. 2 above the said Magdelina O'Brien and W. J. O'Brien had no right or authority to create any lien on said land or subject it to the payment of their debts, and the mortgage executed by them to the Tonganoxie State Bank on the 2d day of April, 1923, to secure the payment of said notes for the sum of $6,500 and $1,500, respectively, on said day, created no lien on said land."

Judgment was entered accordingly. Somers, plaintiff, who held the $6,500 note, contents himself with the money judgment awarded him without foreclosure. The McNaughtons, who held the $1,500 note, appeal because foreclosure to satisfy their money judgment was denied them.

Many nice questions suggested by the record are presented and argued in appellants' brief. It may serve to shorten our discussion to begin with an examination of the deed of 1916. It has some features of a trust deed, of an instrument creating an estate tail, and was designed to impose restrictions upon the grantee's power of alienation.

As a conveyance to Magdelina "as trustee for herself" it is difficult to see what active function there is for the trustee to perform. The instrument imposed no duties on the trustee; consequently by a familiar rule of law as well as by an express provision of statute (R. S. 67-413) the designation of Magdelina as trustee is ineffective, and whatever title nominally passed to her as trustee actually passed to her personally, she being the beneficiary contemplated by the conveyance.

Touching the restrictions upon the power of alienation named in the deed, this court has repeatedly held that when such restrictions are properly made they are valid, but to be effective some enforceable result or consequence for the breach of such restrictions must be prescribed in the instrument. (*Hinshaw v. Wright*, 124 Kan. 792, 262 Pac. 601; *Wright v. Jenks*, 124 Kan. 604, 261 Pac. 840.) In the latter case it was said:

"We have referred above to the power of a grantor or testator to place reasonable restriction for limited periods upon the right of his grantee or devisee to alienate the property granted or devised. But a mere admonitory gesture in a deed or will is insufficient to do so. [Citing cases.] . . .

"Here the language of the mother's will, 'they [plaintiff and his sister] not having the right to sell, encumber or dispose of the same,' was altogether ineffective for two reasons— . . . second, the testator provided no effective bar or alternative consequence to enforce it." (pp. 609, 610.)

And so here, the parents granted the premises to Magdelina with many restrictive but ineffective words. In *Wright v. Jenks* it was provided that if the restrictions were breached the estate conveyed was to terminate in the grantee and pass over to his collateral kindred. In this case if the restrictions are breached, what happens? Nothing. There is neither to be a reëntry of the grantors nor an alternative grant or other consequence. Furthermore, if some implied right of reëntry was reserved in the grantors, that right was conveyed by the widowed mother when she made a quitclaim conveyance of the property to Magdelina on March 31, 1923, when the nature of Magdelina's title was in litigation in the bankruptcy court and prior to the execution of the mortgage of April 2, 1923, which appellants seek to have foreclosed to satisfy their judgment.

Again, if stress be placed upon the fact that by her parents' deed of 1916 only the use of the property for life was conferred on Magdelina, her widowed mother's quitclaim conveyance to her on March 31, 1923, conferred everything which the parents actually or impliedly withheld in their deed of 1916.

But there is language in the deed of 1916 which has the effect of creating an estate tail in Magdelina. The grant is not to her and her heirs and assigns, or to her for life and thereafter to her heirs and assigns, so as to carve the grant into two parts—a life estate to her, and the remainder to others. The grant is to her for life and "at her death in fee simple unto the issue of her body"—the founding of a line of inheritance of the grantors' own choosing at variance with the mode of intestate succession prescribed by statute. It is

therefore an estate tail. (*Gardner v. Anderson, Trustee,* 114 Kan. 778, 781, 227 Pac. 743; id. 116 Kan. 431, 434, 227 Pac. 743.)

The next question which would logically intrude is whether an estate tail is sequestered to the satisfaction of creditors when the tenant in tail becomes a bankrupt. There is fair ground for the view that the trustee in bankruptcy should have, for the benefit of creditors, the whole interest of the bankrupt, which included power to disentail by making a conveyance. We are, however, precluded from an independent exploration of that interesting point, because it was the very matter put in issue by Magdelina and her husband before the federal referee in bankruptcy—a tribunal competent to determine the point, subject to review by the United States district court, and its determination in turn reviewable by appropriate appellate proceedings. The referee in bankruptcy decided in effect that the estate tail was an asset of the bankrupt estate and subject to the payment of Magdelina's debts. That matter is *res judicata.* Magdelina is bound by that judgment. Indeed, she not only acquiesced in it, but was a willing party to a consent decree resulting in a conveyance—the trustee's deed to Phenicie. She took that course to free her title from the entailment so that she could give a valid and binding mortgage on the property. She had the privilege and the power to make a deed, effective to bar issue, for the very purpose of breaking the entailment. That she took such a devious route to attain that end when she might have done so more simply by a conveyance and by repurchase, as was done in *Davis v. Davis,* 121 Kan. 312, 315, 246 Pac. 982, is immaterial. She deliberately set about the breaking of the entailment and succeeded by her ready submission to the judgment of the tribunal in bankruptcy, to be executed, as she contemplated, by a deed by the trustee in bankruptcy. The minor children of Magdelina were impleaded and appeared below by counsel, whose brief is before us in this appeal. The only theory on which Magdelina's children have any concern with this case is as "the issue of her body" as recited in the deed. But that the issue of the body of a tenant in tail is cut off when the entailment is broken is too elementary for discussion. The cited case of *Ryan v. Cullen,* 96 Kan. 284, 150 Pac. 597, is inapposite in several particulars. The grant in that case was by will and not by deed which alone might lead to a different result. (R. S. 22-256.) Moreover, in that case the question was, What interest of the insolvent Ryan brothers was sold by the sheriff on execution? Here in the

bankruptcy proceedings a decision was invoked on the very point whether the interest of the insolvent Magdelina in the property was subject to the payment of her debts in bankruptcy through the medium of a trustee's deed. If there was error in the decision of the referee in bankruptcy it could only be corrected by some proceeding in review or appeal. (7 C. J. 208-212.) Certainly the binding force of the bankruptcy proceedings under which the property was conveyed by the federal trustee cannot be effectively challenged collaterally in a state court. (7 C. J. 244; 34 C. J. 868, 1171-1176; Black on Bankruptcy, 4th ed., § 337; Gilbert's Collier on Bankruptcy [1927], 620, 621.)

Since a mortgage on real estate is not a conveyance in Kansas law, as it is in many other jurisdictions, we could not say that a mortgage of an estate tail would be the equivalent of a conveyance so as to cut off the entailment, nor indeed need we now hold that a simple mortgage of entailed property standing alone would have any legal significance. Neither need we now be concerned with the single question whether property held in entailment is a nonexempt asset which passes *in invitum* to the trustee in bankruptcy when the tenant in tail becomes a bankrupt. Here we are bound to hold that by the binding judgment of a competent tribunal whatever rights and interest in this property Magdelina acquired by her deeds of 1916 and 1923 were cut off completely by the proceedings in bankruptcy and the sale of the property by the federal trustee. It follows that the title she held when she mortgaged the property on April 2, 1923, was exclusively the one in fee simple which she acquired by the deed she received on that date from R. A. Phenicie, purchaser of the property at its sale by the federal trustee in bankruptcy. It likewise follows that the mortgage she gave to secure the payment of appellants' note for $1,500 now reduced to judgment should be foreclosed and the property sold to satisfy it.

To that end the judgment of the district court is reversed with directions to proceed in accordance herewith.