No. 29,110.

ETHEL BROWN et al., *Appellees,* v. LAURA BOONE et al., *Defendants;* J. G. DURHAM and C. L. WORK, *Appellants.*

(284 Pac. 436.)

Opinion filed February 8, 1930.

*A. M. Ebright, Allen B. Burch, J. B. Patterson* and *P. K. Smith,* all of Wichita, for the appellants.

*J. B. McKay,* of El Dorado, for the appellees.

---

No. 29,113.

NELLIE JANSSEN, *Appellee,* v. ARTHUR HERMAN WILKENS, *Appellee,* and AUGUSTA SCHMIDT et al., *Appellants.*

Opinion filed February 8, 1930.

*W. W. Stahl,* of Lyons, for the appellants.

*Samuel E. Bartlett* and *George D. Miner,* both of Ellsworth, for the appellee Nellie Janssen.

The opinion of the court was delivered by

BURCH, J.: The questions presented by these appeals are whether purchasers, one by deed and another by will, acquired estates tail.

In the Brown case a grantor made a deed of described land to Laura A. Boone, her heirs and assigns—

"To have, hold, use and enjoy for and during the period of her natural life, but without power of alienation, and at her death said property to descend to, become and be the property of her then surviving children, share and share alike. In the event any of said children should die prior to the death of their said mother, the share or shares of such child or children to become the property of the then living issue of such child or children. In the event of the death of any of said children prior to the death of their said mother, without issue, the share of such child shall become the property of the surviving children. Possession of said property to be given said grantee upon the death of said grantor."

It will be observed the grant is to Laura A. Boone for life, and at her death to her then surviving children. The next provision is that if any of "said children," that is, children who outlive their mother, be dead already when she dies, their shares should go in a certain way. The meaning is plain enough, notwithstanding the Hibernicism.

The words "have, hold, use and enjoy for and during the period of her natural life," are words commonly used in the creation of life estates. If followed by characteristic words of procreation, an estate tail may be indicated; but ordinarily a grant for use and enjoyment for life is a grant of a life estate.

The words "but without power of alienation," refer to that which is to be held, used and enjoyed, that is, the land, and the restriction is one which is frequently imposed on life tenants. It serves to define the quantity of the grantee's interest. The grantee may enjoy every benefit, profit and advantage which the land is capable of producing, but may not transfer it. The land is to pass from the life tenant to those who take after him, and in case of transfer contrary to the terms of the grant, the time for the vesting in possession of the expectant estate would be accelerated.

The restriction on alienation is not appropriate to creation of an estate tail. It is conceivable that intention to create an estate tail, notwithstanding such a restriction, might be manifested, but in that case the restriction would be nullified, because for historical reasons

the law itself attaches power of alienation to the estate of one holding to him and the heirs of his body.

When land is granted to A and the heirs of his body, A does not take a life estate. True, he can personally enjoy the estate only while he lives, but he takes an estate of inheritance as truly as if the grant were to him and his heirs generally. The inheritance is restrained to particular heirs, but the grantee's interest is an estate of inheritance, and not a life estate.

If land be granted simply to "A and his heirs, but without power of alienation," either the grant is void as contradicting itself, or the restriction is void. The holder of a fee simple has power to alienate, and because presumptively the grantor tried to make an effective conveyance, the restriction is void. The same is true of a grant to "A and the heirs of his body, but without power to alienate." The restriction is void.

In this instance, the restriction on alienation by Laura A. Boone is incompatible with grant of an estate tail. The restriction is compatible with grant of a life estate, and *prima facie* she took a life estate. If she took a life estate, those who took on termination of her life estate were remaindermen.

The next takers after Laura A. Boone were her children. The words "heirs" and "heirs of her body" are peculiarly words of limitation. The word "children" is just as peculiarly a word of purchase. It is descriptive of persons, of James and Johnnie and Mary and Lizzie, and is construed as a word of purchase unless something in the instrument convinces that it was used in some other sense. There is nothing in this deed to indicate that the grant was not grant of a life estate with remainder over.

The deed was not testamentary in character. A subsequent deed by the grantor did not modify the effect of the first conveyance. The life tenant could not prejudice the remaindermen by dissipating the substance of the thing granted, the land, by means of a mineral lease.

In the Janssen case a testator devised a quarter section of land to his wife for her life. By identical provisions he then gave the north half of the quarter section to his daughter Lillie, and the south half to his daughter Nellie. The devise to Nellie reads as follows:

"Sixth. I further direct that at the death of my wife, Augusta Janssen, the south half of the northwest quarter of section nine, township seventeen, range

nine, shall be set aside to my beloved daughter, Nellie Janssen, during her natural lifetime, and at her death to be divided share and share alike to her body heirs only, if any, and if none, then the same shall be divided share and share alike among my remaining heirs; provided further, that the said real estate shall not be sold, and only the profits from said real estate shall be used by her, and that she shall pay all taxes or other legal assessments against said real estate, and if she refuses or neglects to pay said taxes or assessments, then in that event, after three years from date same shall be due and payable, the said land shall revert to my remaining heirs. Provided further, that the sum of one thousand dollars shall be paid to my daughter, Nellie Janssen, out of my estate at the time of the death of my wife, Augusta Janssen, or as soon thereafter as may be practical to avoid sacrifice to said estate, the land and the one thousand dollars shall be her portion of said estate, and no more."

Everything said about the Boone deed applies here. Normally, the devise to Nellie for life and at her death to her body heirs, would indicate an estate tail. But just as the word "children" may sometimes be a word of limitation, the words "body heirs" may sometimes be words of purchase. (*Bryant v. Flanner*, 99 Kan. 472, 162 Pac. 280.)

To determine the quantity of interest which the testator intended his daughter Nellie should take, the will must be considered in its entirety. Grouping the provisions relating to what Nellie was to have, we find: The land was to be set aside to her during her natural life; the profits only were to be used by her, and the land was not to be sold; she was to pay taxes, and if she permitted taxes to become delinquent the land was to go to others. This spells life estate, and not estate of inheritance convertible into fee simple absolute by an ordinary conveyance.

The court is of the opinion a life estate to Nellie is so strongly indicated that when the testator spoke of her body heirs only, he had in mind a class of remaindermen who were to take after her.

The judgment of the district court in the Brown case is affirmed. The judgment of the district court in the Janssen case is reversed, and the cause is remanded with direction to enter judgment for appellants.