No. 33,564

HENRY MEYER, Revived in the Names of ROY MEYER and HARRY MEYER, Executors of the Last Will and Testament of Henry Meyer, Deceased, *Appellees*, v. CHRIS MEYER, RUTH MEYER et al., *Defendants;* BETHEL MARGARET BOYD et al., *Appellants.*

(78 P. 2d 910)

Opinion on rehearing filed May 7, 1938. (For original opinion of reversal see 146 Kan. 907, 73 P. 2d 1007.)

*Jack Copeland, William M. Davison* and *Paul R. Nagle,* all of St. John, for the appellants.

*D. H. Donnelly,* of Stafford, *Robert Garvin, Evart Garvin* and *Morris Garvin,* all of St. John, for the appellees.

The opinion of the court was delivered by

ALLEN, J.: The motion of the appellees for a rehearing in this case was granted. (See *Meyer v. Meyer,* 146 Kan. 907, 73 P. 2d 1007.) Supplemental briefs have been filed, and the case has been reargued. We have studied with attention the very able briefs of counsel and have examined the authorities cited.

Where the limitation in a deed or will appears in the simple form as "to A and the heirs of his body," or "to A for life, remainder to the heirs of his body" or, "to A for life, remainder to his issue," estates tail have been sustained without question. But where the gift to "heirs of the body" or to "issue" is accompanied by additional words, it becomes necessary to determine whether the author of the instrument used those words in their technical sense. For centuries the words "heirs of the body" have been the appropriate words to create an estate tail. However, the context may show these words are used in the sense of children. Thus, in the important case of *Jordan v. Adams,* 9 C. B. (J. Scott) N. S. 483, the testator devised land to William Jordan for life and after his death to the heirs male of his body in such parts and proportions "as the said William Jordan *their father*" should direct, limit and appoint. Here the words "their father" showed that the words "heirs male of his body" were used in the sense of children.

In *Brown v. Boone,* 129 Kan. 786, 789, 284 Pac. 436, it was said:

"Normally, the devise to Nellie for life and at her death to her body heirs, would indicate an estate tail. But just as the word 'children' may sometimes be a word of limitation, the words 'body heirs' may sometimes be words of purchase. (*Bryant v. Flanner,* 99 Kan. 472, 162 Pac. 280.)" (p. 789.)

The provision in the will before us reads:

"I give, bequeath and devise to my beloved son, Henry Meyer, a life estate in and to the following-described real estate (description) and at the death of my son, Henry Meyer, I give, bequeath and devise the aforesaid described real estate in fee simple to the heirs of his body."

The problems presented by a remainder "in fee simple to the heirs of his body" and by a remainder "to the heirs of his body, their heirs and assigns" are similar and may be considered together.

In our recent case of *Brann v. Hall,* 141 Kan. 749, 43 P. 2d 229, the testator devised land to his son, H. R. Rathbun, for life, and upon his death "unto the lawfully begotten issue of my son, H. R. Rathbun then living, all of the said real estate, to take share and share alike,' and to their heirs and assigns forever." After reviewing our former decisions, it was said:

"The testator did, in part, select a fixed line of inheritable succession limited to the issue of the body of his devisee, but by express inclusion, he then provided that the heirs and assigns of the devisee were to take, and thus the regular and general succession of the statutory heirs at law was not cut off. Under the terms of the devise, the line of inheritable succession in the selected line could not continue so long as posterity endures in the regular course of descent, for the testator has provided otherwise, and for that reason no estate tail in the first taker was created. The result is that the devisees named as taking life estates took life estates and no more, the remainders going to the issue and the heirs and assigns of such issue of the respectively named devisees of the life estates. . . ." (p. 752.)

In *Aetna Life Ins. Co. v. Hoppin,* 214 Fed. 928, 131 C. C. A. 224, the United States Circuit Court of Appeals construed a deed to "Franklin Hoppin and Sarah Hoppin his wife, during their natural lives and the life of the survivor of them, and at the death of the survivor to the heirs of the body of said Sarah, their heirs and assigns." In holding this limitation created a life estate with a contingent remainder, the court said:

"In the present deed, however, the context displays the sense in which the grantor used the words, 'heirs of the body of Sarah.' The context is 'Sarah for life, then the heirs of her body, their heirs and assigns.' He did not intend that Sarah should have a fee simple, for there is no limitation to her general heirs in unending succession. He did not intend that she should have a fee tail, for the words of limitation are not restricted merely to the stream of her blood so long as it shall continue. He intended, what he plainly said, that Sarah should have only a life estate; and since, therefore, the heirs of the body of Sarah were not to take from her by descent, he intended that they should take by purchase; and since the description of the purchasers is followed by the words of limitation 'their heirs and assigns,' he intended that those purchasers should take the remainder in fee simple. . . ." (p. 931.)

(Mr. Kales was of counsel in the case.)

Consider next the cases where the remainder is limited to the heirs of the body in fee simple. In this group of cases the most recent is *Phoenix Mutual Life Ins. Co. v. Nevitt,* post, p. 772, 78 P. 2d 913 (this day decided). Testator devised certain land and personal property to his brothers and sister for life, and upon the death of the last survivor, remainder "to the bodily heirs of all of my

brothers and sister in equal shares, in fee simple, per capita, and not per stirpes." Following *Grossenbacher v. Spring,* 108 Kan. 397, 195 Pac. 884, it was determined that limitation did not create an estate tail.

Likewise in *Coleman v. Shoemaker,* post, p. 689, 78 P. 2d 905 (this day decided), after a life estate the remainder was "in fee simple, to the living issues of the body of the said Mamie Jordan Taylor, if any there be." This was held not to create an estate tail in the first taker.

A similar result was reached in *Berthoud v. McCune,* 130 Kan. 634, 287 Pac. 904, where after a life estate to testator's granddaughter the remainder was to "such of the issue of said Lottie Naylor as may be living at the time of her death, in equal proportions, share and share alike, and in fee simple." In that case the court said:

"It has been ruled that in cases of this kind effect should be given to the manifest intention of the testator. (*Brown v. Boone,* 129 Kan. 786, 284 Pac. 436.)" (p. 636.)

In *Burnworth v. Fellerman,* 131 Kan. 186, 289 Pac. 433, the testator devised property "in trust for the heirs of the body of said Nathana Corbin." By a later clause, a life estate was given to Nathana Corbin. There was a gift over if Nathana Corbin should die without any child or children of her body, or any grandchild or children of her body surviving her. It was held that this language did not create an estate tail.

In *Klingman v. Gilbert,* 90 Kan. 545, 135 Pac. 682, the testator devised land to his daughter and his two sons. The limitation to the sons was in effect as follows: To my sons A and B for life, at their death to their widows for life, or until they marry again, and upon the death of said widows, to the heirs of the body of said sons in fee simple. It was held the sons took a life estate.

Again in *Miller v. Miller,* 91 Kan. 1, 136 Pac. 953, an owner of land conveyed the same "to George W. Miller for his life, remainder to Nettie J. Miller for her life, should she survive her husband, or so long as she remains his widow, remainder in fee to the heirs of the body of George W. Miller, and in default of such heirs, reversion to the grantor." It was held George W. Miller took only a life estate.

Counsel for appellees direct our attention to *Davis v. Davis,* 121 Kan. 312, 246 Pac. 982; *Somers v. O'Brien,* 129 Kan. 24, 281 Pac.

888; *Houck v. Merritt*, 131 Kan. 151, 289 Pac. 431. In each of these cases it was held that an estate tail was created, although the words "fee title," "fee simple" and "fee simple forever" appear in the remainder clause.

It is not contended, however, that the question now raised was presented to or considered by the court in the cases relied upon by appellees. We are therefore confronted with a series of cases where after a life estate to a person a remainder was given to the heirs of the body in fee simple of such life tenant. In a majority of these cases it was held that a fee tail estate was not created. In this state of the authorities it cannot be urged that a rule of property has been established in favor of either doctrine.

Appellees in their brief state:

"Suppose in this case that the will of Margretha Meyer had omitted the words 'in fee simple,' what would have been the nature of the title of the heirs of her body on the death of Henry Meyer had the entailment not been broken by the deed in this case? Certainly it would have been a fee simple title."

With deference to counsel we must state that the question is not new, and the answer is not sound. The statute DeDonis was passed in the year 1285. The various theories as to the nature of an estate tail as debated by the courts after the passage of the statute are stated in Plucknett's History of the Common Law. At page 356 of that work it is stated:

"Shortly afterwards in 1314 we get a formal theory of the entail announced by Serjeant Toudeby in these words: 'In the case where tenements are granted in fee tail and the grantee has issue, the fee is severed from the freehold, and the fee is in the issue while the freehold only is in the father.' If this remarkable theory had prevailed long enough to combine with the development of the idea that an entail endured indefinitely as long as there were heirs, the law would have had a very different aspect, for a tenant in tail in possession would always be a life tenant only, while his heir apparent held a fee—the books do not venture to say, however, that this would be a fee simple. By the middle of the fourteenth century this doctrine is extinct. Perhaps it was felt that if even the issue in tail had a fee, it would be difficult to describe what the reversioner had."

In the construction of wills the rule is that technical words shall have their legal effect, unless from inconsistent words in the context, it is very clear the testator meant otherwise. The meaning expressed by the language employed is to be derived from reading the will in its entirety. The explanatory words "in fee simple" are words of known legal import, and have a direct and immediate

bearing on the words "heirs of his body." Construed together, it is clear the words "heirs of his body" are used as words of purchase and not as words of limitation.

Cases in other jurisdictions on the question here involved are arrayed in opposing camps, and we do not think it necessary to review them. For the reasons stated, we adhere to our former decision, and the judgment there announced.

DAWSON, C. J. (concurring specially): I acquiesce in the decision of the majority of the court, chiefly because I believe that through experience the bench and bar of this state have come to the view that estates tail do not accord well with our Kansas policy of preserving as far as practicable the simplicity of land titles, and that our courts should scrutinize more critically the language of wills and conveyances which in some cases we have heretofore held to create estates tail.

THIELE, J., joins in the foregoing specially concurring opinion.

HARVEY, J. (dissenting): After the opinion in this case was handed down (146 Kan. 907, 73 P. 2d 1007), motions for rehearing pointed out that no Kansas case was cited in the opinion, although the trial court had rested its decision on some of them, and that our opinion was based on cases from Illinois, where by statute (Callaghan's Ill. Stat. Ann., ch. 30, § 6, originally § 6 of the Act on Conveyances of 1827) estates tail, created as at common law, were converted into life estates in the first takers and fees simple absolute in the remaindermen. We have no such statute in this state. The nearest approach to it is G. S. 1935, 22-256, which has been held to apply only to heirs generally and not to apply to a limited class of heirs, such as issue, heirs of the body, children of one's own blood, etc. (*Gardner v. Anderson, Trustee,* 116 Kan. 431, 227 Pac. 743; *Allen v. Pedder,* 119 Kan. 773, 778, 241 Pac. 696.) Beginning with *Ewing v. Nesbitt,* 88 Kan. 708, 129 Pac. 1131 (1913), estates tail created as at common law have been recognized as a part of the law of this state; hence it was urged the Illinois cases are not in point. The court therefore granted a rehearing, with the result that a new opinion has been written.

From a reading of the briefs and opinions in *Davis v. Davis,* 121 Kan. 312, 246 Pac. 982; *Somers v. O'Brien,* 129 Kan. 24, 281 Pac. 888, and *Houck v. Merritt,* 131 Kan. 151, 289 Pac. 431, in each of

which an estate tail was held to have been created, although the words "fee title," "fee simple," and "fee simple forever," appeared in the remainder clause, it seems inaccurate to say the effect to be given to those words was not presented to or considered by the court. Indeed, it would seem the contrary appears. It long has been the universal rule in this state that a conveyance or a devise of specific property to a named person vests in him the full title to the property (if the grantor or testator had full title), a title which is sometimes spoken of as a fee simple title; but those words, when used, do not add anything to the title, nor does their omission limit the title. A multitude of illustrations of this rule could be pointed out in our decision.

*Klingman v. Gilbert*, 90 Kan. 545, 136 Pac. 682, was an action for damages by a vendee based upon fraudulent representations of vendors with respect to the title they had to the property sold, and this involved a will. With respect to this there were two principal questions: (a) Whether certain provisions of the will violated the rule against perpetuities, and it was held they did not, and (b) the meaning of the words "failing such issue," as used in the will; and this, as used, was construed to refer to the failure of the issue of a designated person at a definite time, hence, not to be an indefinite failure of issue. The principal question in *Miller v. Miller*, 91 Kan. 1, 136 Pac. 953, was whether a person, by deed, could create an estate to begin at a future time. It was held our statute authorized such a conveyance. Some minor questions were discussed. There is no discussion in the opinion of an estate tail, and no intimation that anyone contended such an estate had been created. I regard neither of these cases as being in point here. Many cases may be found in our reports in which the question whether an estate tail had been created might have been raised, but was not. Such cases are not in point, and I think it improper to cite them as controlling authorities in the case before us.

In some of the other cases cited trusts were created and title vested in the trustees, with directions to pay net income, or some specific portion of it, to designated persons for life, the property at their death to go to their issue. These cases are not in point, since the persons to whom income was paid had no title of any kind to the property. Distinctions in other cases cited could be pointed out which would distinguish them from the present case, but the time available for me to write my views is limited.

The holding that an estate tail was not created in this case rests solely, or at least primarily, on the words "in fee simple" in the remainder clause of the provision of the will in question. Although the same expression, or a similar one, was in the remainder clause in *Davis v. Davis*, supra; *Somers v. O'Brien*, supra, and *Houck v. Merritt*, supra, it was held in each case that an estate tail was created. In this case the trial court based its decision upon our opinions in these cases as well as on other pertinent decisions of this court. It had a right to rely upon those decisions, and if its decision is to be reversed, our former decisions should be overruled. The force of them should not be passed over by an inaccurate statement that the question was not presented to or considered by the court in those cases.

WEDELL, J., joins in this dissent.