No. 33,841

The Phoenix Mutual Life Insurance Company, *Appellant*, v. Wilbur D. Nevitt et al., *Appellees;* Helen Dale Nevitt et al., *Intervenors* and *Cross-appellants.*

(78 P. 2d 913)

Opinion filed May 7, 1938.

*S. C. Bloss, George T. McNeish,* both of Winfield, *H. W. Goodwin* and *W. H. Schwinn,* both of Wellington, for the appellant.

*H. F. Hudson, W. D. Jochems, J. Wirth Sargent, Emmet A. Blaes, Roetzel Jochems* and *W. G. Muir,* all of Wichita, for the appellees and cross-appellants.

The opinion of the court was delivered by

Smith, J.: This was an action on a promissory note and to foreclose a mortgage securing it. Judgment was entered for plaintiff on a judgment on the note had in an action in another county. The trial court refused to foreclose the mortgage. The plaintiff appeals from that portion of the judgment refusing to foreclose the mortgage. Certain intervenors also appeal from a portion of the judgment affecting them.

There is no dispute about many of the essential facts.

This action was filed December 4, 1934. The petition alleged the making of the note in question by the defendants, Wilbur D. Nevitt; Pearl M. Nevitt, his wife; Catherine M. Nevitt, a single woman; Oak D. Nevitt; Helene Nevitt, his wife; Frank R. Nevitt, a single man; and Zerelda W. Nevitt, a widow, who was deceased at the time the action was brought. It made the allegations necessary to plead a default in payment of the note, such as failure to pay interest and taxes, and that the note had been made to the Albright Farm Loan Company and transferred to plaintiff and that plaintiff treated the entire indebtedness as due. Judgment was asked against the defendants in the amount of $25,451.67. For a second cause of action the petition alleged that on June 11, 1930, defendants owned the land in Sumner county covered by the mortgage which the action sought to foreclose; that on June 11, 1930, defendants executed the mortgage in question and that this mortgage also covered certain real estate in Cowley county, Kansas, and Kay county, Oklahoma. The petition further stated that the mortgage in question was given to secure the payment of a note for $25,000 and that this mortgage provided that on default in certain payments the mortgage should be a lien on the real estate in question. The petition further stated that the mortgage had been given to the P. H. Albright Farm Loan Company and had been assigned to plaintiff and that default had been made in three payments on the note; that the conditions of the mortgage had been broken and it was subject to foreclosure. The petition then set out certain other persons who claimed some interest in the real estate, all inferior to plaintiff's lien.

The prayer was for the foreclosure of the mortgage and that the land be sold to satisfy it.

On January 19, 1935, defendants filed an unverified general denial by way of answer to this petition. On March 25, 1935, defendants filed an amended answer in the nature of a general denial. This answer was verified.

On the above date certain minors filed an intervening petition. These intervenors were all heirs of the original defendants. This petition alleged that the intervenors were each minor devisees of Harry B. Nevitt, deceased; that on June 1, 1926, Harry Nevitt made a will whereby he disposed of all his property; that under the terms of the will a life estate was given to the brothers and the sister of testator, who survived him, and a remainder was devised to the intervenors; that these brothers and sister were appointed executors of the will with a limited power to sell; that at the time of his death

Harry B. Nevitt was the owner of the undivided one-sixth interest in the real estate mentioned in the petition. The petition further stated that the will spoken of was a matter of public record on June 10, 1930, when the mortgage in question was executed, and plaintiff had actual and constructive notice of its terms; that plaintiff caused the executors to execute a purported transfer of their interest in the property that belonged to the estate of Harry B. Nevitt to James H. Albright on the 10th day of June without any consideration being paid, and on the same day Albright transferred this undivided interest to secure the payment of their personal note; that these transfers were made with full intention on the part of all parties to circumvent the provisions of the will. The petition then alleged that each of the intervenors was alive at the time Harry B. Nevitt made his will and at the time he died, and that plaintiff had notice of this. The prayer was that the mortgage be held for naught as a lien upon the interest of the intervenors in the real estate in question.

A copy of the will was attached to the petition. It contained the following clause:

"Upon the death of the last survivor of my brothers and sister, I give, devise and bequeath all the personal property then in the hands of such last survivors, belonging to my estate, and any real estate which has not been sold, to the bodily heirs of all of my brothers and sister in equal shares, in fee simple, per capita, and not per stirpes."

In order to understand the questions involved it now becomes necessary to set out certain proceedings from Cowley county. On December 1, 1934, three days before the filing of the action just described plaintiff in this action filed an action in Cowley county on the same note. Coupled with it was an action to foreclose the same mortgage, except that it asked only that the mortgage be foreclosed upon the land covered by it that was located in Cowley county. It should be noted that no reference was made in the Cowley county action to the various other people whose claimed liens were mentioned in the Sumner county action. Personal service was had upon defendants in that action. The defendants did not answer. January 7, 1935, judgment was taken, foreclosing the mortgage and ordering the property sold. On February 18, 1935, the property was sold and on February 19, 1935, the sale was confirmed. The property was sold for $5,000 to the plaintiff. This amount was applied on the judgment.

On December 20, 1935, defendants applied for leave to file an amended answer in this action. On January 13, 1936, they filed their

amended answer. In this answer they stated first a general denial. The answer further stated that the court did not have jurisdiction of the cause because the plaintiff had endeavored to split one cause of action on the note and mortgage into two causes of action. All the pleadings and the journal entry of judgment in the Cowley county action were attached to the amended answer. The prayer was that the action be dismissed.

At the trial of this action some evidence was offered and rejected. A point is made of that on this appeal, but on account of the conclusion reached on the action as a whole we shall not consider it further. The court gave the plaintiff judgment for $35,775.62, but not on the note upon which the action was brought. The journal entry recited that the note sued upon had been merged in the judgment in Cowley county and that by virtue of the exhibits attached to the answer and introduced in evidence in the case the judgment was before the court and the plaintiff should have judgment against the defendants for the sum of $35,775.62 with interest and costs. As to the mortgage which plaintiff sought to foreclose, the trial court found that it was pleaded in the action mentioned in Cowley county, and the court was without jurisdiction to order the foreclosure of the same mortgage upon real property located in Sumner county. As to the intervening petition, the trial court found that the will of Harry B. Nevitt created an estate tail in the first takers, and the entailment was cut off by a conveyance and reconveyance to defendants.

Judgment was rendered in favor of plaintiff and against Wilbur D. Nevitt, Pearl M. Nevitt, his wife, Catherine M. Nevitt, a single woman, Oak D. Nevitt, Helene M. Nevitt, his wife, and Frank R. Nevitt, a single man, in the sum of $35,775.62 and refusing to foreclose the mortgage.

The plaintiff appeals from that part of the judgment wherein the trial court refused to foreclose the mortgage on the Sumner county land. Present counsel for appellants did not present the case to the trial court. The intervening petitioners appeal from that part of the judgment wherein the court held that the will of Harry Nevitt created an estate tail in the first takers.

Plaintiff points out first that there were some parties who were necessary parties to the action to foreclose the mortgage on the Sumner county land, who were not necessary to the action to foreclose the mortgage on the Cowley county land. There were certain persons who claimed liens on the Sumner county land. Plaintiff

points out that the Cowley county action did not ask a foreclosure on the Sumner county land, but only on that in Cowley county, and that the judgment rendered upon the mortgage was for foreclosure upon the land in Cowley county. Plaintiff argues that it had a right to bring an action on the note and to foreclose the mortgage all in one action or it could, if it wished, seek this relief in two different actions.

On this question we will examine the statutes on the subject.

G. S. 1935, 60-501, provides as follows:

"Actions for the following causes must be brought in the county in which the subject of the action is situated, except as provided in the next section: *First*—For the recovery of real property, or of any estate or interest therein, or for the determination in any form of any such right or interest, or to bar any defendant therefrom. *Second*—For the partition of real property. *Third*—For the sale of real property under a mortgage, lien or other encumbrance or charge."

G. S. 60-502 provides:

"If the real property, the subject of the action, be an entire tract, and situated in two or more counties, or if it consists of separate tracts situated in two or more counties, the action may be brought in any county in which any tract or part hereof is situated, unless it be an action to recover possession thereof; and if the property be an entire tract situated in two or more counties, an action to recover the possession thereof may be brought in either of such counties; but if it consists of separate tracts in different counties, the possession of such tracts must be recovered by separate actions, brought in the counties where they are situated."

G. S. 1935, 60-601, also provides:

"The plaintiff may unite several causes of action in the same petition, whether they be such as have been heretofore denominated legal or equitable, or both. But the causes of action so united must affect all the parties to the action, except in actions to enforce mortgages or other liens."

G. S. 1935, 60-3107, provides as follows:

"In actions to enforce a mortgage, deed of trust, or other lien or charge, a personal judgment or judgments shall be rendered for the amount or amounts due, as well to the plaintiff as other parties to the action having liens upon the mortgage premises by mortgage or otherwise, with interest thereon, and for the sale of the property charged and the application of the proceeds, or such application may be reserved for the further order of the court; and the court shall tax the costs and expenses which may accrue in the action, apportion the same among the parties according to their respective interests, to be collected on the order of sale or sales issued thereon. When the same mortgage embraces separate tracts of land situated in two or more counties, the sheriff of each county shall make sale of the lands situated in the county of which he is sheriff. No real estate shall be sold for the payment of any money, or the

performance of any contract or agreement in writing, in security for which it may have been pledged or assigned, except in pursuance of a judgment of a court of competent jurisdiction ordering such sale."

It will be seen that G. S. 1935, 60-502, provides that where real estate, which is the subject matter of the action, consists of separate tracts situated in two or more counties, the action may be brought in any county in which any tract is situated. That statute provides where the action should be brought to foreclose a mortgage covering land in different tracts, some in one county and some in another. Under the terms of this statute, the action could have been brought in either county. This statute should be construed in this case, together with G. S. 1935, 60-3107.

It will be noted that the above statute provides that in case of a judgment being rendered in an action to enforce a mortgage where the same mortgage embraces separate tracts of land situated in two or more counties, the sheriff of each county shall make sale of the lands situated in the county of which he is sheriff. When these two statutes are construed together it becomes clear that action to foreclose this mortgage should have been brought in either Sumner or Cowley county, and an order of sale pursuant to the judgment should have been issued to the sheriff of each county so that he could sell the land situated in his county. Had the procedure outlined in these statutes been followed in this case the action filed in Cowley county would have referred to the Sumner county land and judgment would have been asked for and given foreclosing the mortgage on the Sumner county land. The fact that there were some parties who claimed liens on the Sumner county land who did not claim any on the Cowley county land makes no difference. Their liens could have been litigated in the Cowley county action by proper allegation in the petition. The concluding provision in G. S. 1935, 60-601, meets that situation. It will be noted the above section provides that several causes of action may be united in one petition, but the causes of action so united must affect all the parties to the action except in actions to enforce mortgages or other liens.

Once we have concluded that the action to foreclose this mortgage on the Sumner county land could have been brought in Cowley county, we must examine the question of the effect of bringing the action in Cowley county and in it asking for a foreclosure on the Cowley county land only.

In *Kaw Valley State Bank v. Thompson*, 140 Kan. 726, 37 P. 2d 985, this court considered a somewhat analogous question. In that

case the plaintiff had filed an action asking for judgment on a note and for foreclosure of a mortgage. The defendants defaulted. When the case came on to be heard the plaintiff stated to the court that it did not wish to press the foreclosure. Judgment was given for recovery on the note. An attempt was made to satisfy the judgment by levying on some property of defendants in another county. Later the plaintiff asked in another action that its mortgage be foreclosed. This court held that the foreclosure of the mortgage was *res judicata* on account of the former action in which the petition had asked for its foreclosure. The rule from *Fletcher v. Kellogg*, 125 Kan. 330, 263 Pac. 1048, was invoked. There this court held:

"That a lawsuit between litigants in their ordinary capacity adjudicates between them not only what they chose to litigate, but everything incidental thereto which could be litigated under the facts which constitute the cause of action."

See, also, *McMichael v. Burnett*, 136 Kan. 654, 17 P. 2d 932; also, *City of Council Grove v. Kansas Electric Power Co.*, 137 Kan. 109, 19 P. 2d 460.

In *Kaw Valley State Bank v. Thompson*, supra, this court said:

"If everything incidental to the cause of action—and there was but a single cause—be properly determinable in the first judgment, it, under the authorities, is deemed a final one and subject to the objection of defendants against the relitigation of that issue or any part of it in any subsequent proceeding." (p. 730.)

In *Insurance Co. v. Carra*, 101 Kan. 352, 166 Pac. 233, this court approved a judgment where an action was brought in one county to foreclose a mortgage on land in separate tracts, part situated in the county where the action was brought and part in another county.

The action in this case could have been brought in Cowley county to foreclose the mortgage on the land in that county and in Sumner county as well. A copy of the mortgage was attached to the petition. Every question necessary to be litigated with reference to the note and the mortgage on the land in both counties could have been litigated in the Cowley county action. We hold, therefore, that the question of the mortgage foreclosure was *res judicata* by reason of the judgment in Cowley county.

Plaintiff next points out that these two actions were filed within three days of one another and that defendants did not file their amended and supplemental answer raising the defense of plaintiff splitting its cause of action until after the expiration of the term

at which the Cowley county judgment was rendered. It is also pointed out that at the proper time for filing an answer defendants in this action filed an unverified general denial. Plaintiff argues that when defendants filed their unverified denial they waived their right to raise the defense that plaintiff had split its cause of action.

This argument is not good, for the reason that plaintiff saw fit to file a reply by way of a general denial to the answer of defendants in which they raised the defense of the Cowley county proceedings. Plaintiff went to trial on the issues raised by that answer. Plaintiff urges that the question of the right of defendants to raise the defense of the Cowley county proceedings was presented to the trial court on the motion for a new trial; but the fact remains that as the issues were finally made up by the pleadings, including the reply of plaintiff, and submitted to the trial court the trial was had on the issues raised by the amended and supplemental answer of defendants and the reply of plaintiff denying the allegations of this answer. In view of this situation plaintiff cannot argue that defendants waived their right to raise the defenses pleaded in their amended and supplemental answer.

We hold, therefore, that the trial court was correct in holding that it was without jurisdiction to foreclose the mortgage sought to be foreclosed in this action.

There remains the issue raised by the intervening petition. It will be noted that Harry B. Nevitt left a will whereby a question arises whether that will created an estate tail. If it did, then it was cut off by the conveyance of the land in question to the mortgage company and the reconveyance of it. If it did not, then the intervening petitioners own an undivided one sixth of this real estate. The will was in part as follows:

"Subject only to the payments provided in paragraph 1 above, I give, devise and bequeath to my brothers and sisters surviving me, the net income during their natural lives, of all the property of which I may die seized, real and personal; and such net income is to be divided quarterly, without anticipation among such brothers and sister, into the number of shares there are brothers, or brothers and sister, living at the time of each division; that is to say, as each of my brothers, or sister, shall die, the net income is to be divided by the number surviving until the death of the last one. And I further direct that said brothers and sister surviving me, named as executors herein, shall have a right to sell any real estate of which I may die seized, without any order of court, and invest the proceeds of such sale in good, safe securities, and the proceeds thereafter to be considered and treated as personal property and the net income from such securities to be paid as above provided; and

I further enjoin upon them, and direct, that they keep such personal estate separate from the individual estates and accounts of my brothers and sister, so that said property may be at any time readily identified.

. "Upon the death of the last survivor of my brothers and sister, I give, devise and bequeath all the personal property then in the hands of such last survivor, belonging to my estate, and any real estate which has not been sold, to the bodily heirs of all of my brothers and sister in equal shares, in fee simple, per capita, and not per stirpes."

The question is whether the above will created an estate tail in the brothers and sister of Harry B. Nevitt. This court considered a case somewhat analogous to this in *Grossenbacher v. Spring,* 108 Kan. 397, 195 Pac. 884. In that case a will devised property for the use and benefit of four grandchildren of testator, during their natural life, but provided that only the net income should be paid to the grandchildren and at death of the last survivor of the grandchildren all the estate left in trust should be equally divided among the heirs of the grandchildren. Some of the grandchildren brought an action in which they contended that the will created an estate tail which they were at liberty to terminate by conveyance. This court held that the will did not create an estate tail because it did not devise any property directly to the grandchildren, but only provided that the income should be paid to them. It was pointed out that there was an active duty for the trustee to perform which could not be fully executed until the death of the last surviving grandchild.

This reasoning applies to this case. Here nothing was devised directly to the brothers and sister of the testator except the net income of the property. The will provided that the brothers and sister could sell the property, but provided that when it was sold the proceeds should be invested in securities and held intact for the benefit of the bodily heirs of the brothers and sister. This will did not create an estate tail, but, on the other hand, was an active trust to be executed for the benefit of the intervening petitioners. See, also, *Coleman v. Shoemaker,* ante, p. 689, 78 P. 2d 905; also, *Meyer v. Meyer,* ante, p. 664, 78 P. 2d 910 (both opinions handed down this month). The conveyance to the mortgage company was of no effect.

The judgment of the trial court holding that it was without jurisdiction to foreclose the mortgage is affirmed; that part of the judgment holding that the will of Harry B. Nevitt created an estate tail is reversed.