Klingman v. Gilbert.

W. C. KLINGMAN, *Appellant,* v. HENRY L. GILBERT et al., *Appellees.*

No. 18,390.

SYLLABUS BY THE COURT.

1. WILL—*Life Estate in Widow until Death or Marriage—Remainder to Children—Proper Construction.* A devise having been made to a widow for life or until her remarriage, a provision of the will disposing of the property upon her death is held to apply also in case of her marriage, no other disposition having been expressly provided, and this appearing to be in accordance with the purpose of the testator as gathered from the entire instrument.

2. ——— *Not Obnoxious to Rule Against Perpetuities.* A devise to the testator's son for life, then to the son's widow for her life or until she remarried, with a remainder to the son's bodily heirs, is not obnoxious to the rule against perpetuities, notwithstanding the son might marry a woman born after the testator's death, because the estate of the son's heirs would vest as soon as their father died, although the possession might be postponed to a later date.

3. WILL—*The Phrase "Failing such Issue" Construed.* A will providing that property devised to the testator's daughter should, "if said daughter shall be survived by issue," descend to such issue, "but failing such issue," should go to her brothers, means that if at the time of her death the daughter had living issue such issue should take an absolute title, and that otherwise the title should pass to the brothers. If the rule of the common law as in force in this state, that the phrase "failure of issue," when used without explanation, is deemed to refer to an indefinite failure, the language quoted is sufficient to show a contrary intention.

4. PLEADINGS—*Defective Title—Rescission of Sale—Damages— Petition Not Demurrable.* A petition alleging that plaintiff purchased land from the defendants in reliance upon their willfully false statements that they had an absolute title in virtue of being the heirs of a former owner, when in fact such owner had left a will by which they took less than a full title, held good on demurrer, notwithstanding rescission is not in terms asked for, and no formal offer to reconvey is made, and facts are not pleaded by which the amount of recovery could be accurately measured, if the action is regarded as one for damages.

Appeal from Franklin district court; CHARLES A. SMART, judge. Opinion filed October 11, 1913. Reversed.

*W. D. Vance, R. E. McTaggart,* both of Belleville, and *W. J. Costigan,* of Ottawa, for the appellant.

*Wilber S. Jenks,* of Ottawa, for the appellees.

The opinion of the court was delivered by

MASON, J.: W. C. Klingman brought action against the grantors in a general warranty deed purporting to convey to him a clear title to a tract of land. He

alleged in effect that he had been induced to buy the land from the defendants in reliance upon their willfully false representation that they had inherited it from Horatio Gilbert, who had owned it at the time of his death, whereas in fact said Horatio Gilbert had left a will which had been duly probated, disposing of the land in such manner that the defendants, although having a life estate, could not make a perfect title thereto. He asked damages on account of various items of expense, including the sum paid for the land. A demurrer to the petition was sustained upon the sole ground that the will was void because it violated the rule against perpetuities, the court holding specifically that except for this consideration a cause of action was stated.

The defendants are Henry L. and John D. Gilbert and their wives, and Altha Moody, who is a widow. The portion of the will upon which its validity depends reads as follows:

"I give and bequeath to my daughter, Mrs. Altha Moody, and sons, John D. and Henry L. Gilbert, for the period of their natural lives, all real estate of which I am now or may at my death be legally seized, each of said sons and daughters to share equally. Upon the death of said sons or daughters, or either of them, their respective shares shall descend as follows: The shares of the sons shall descend to their widows to be used and enjoyed by them during the period of their natural lives or until they shall again marry, and upon the death of said widows the interest of each shall descend to the heirs of the body of said sons in fee simple. If said daughter shall be survived by issue, her estate shall descend to such issue, but failing such issue, her estate shall descend to said sons and upon their death to the surviving widows, if any, of said sons for life or until they shall again marry and upon their death to the heirs of the body of said sons in fee simple."

It will be noted that upon the death of one of the testator's sons leaving a widow, she is to take an estate during her life or until she remarries. The condition

of the title resulting from her death is stated, but nothing is expressly said as to the effect of her remarriage. We think it free from reasonable doubt, however, that the testator intended the result to be the same whether the widow's interest was extinguished by her death or by her remarriage, and therefore, that the phrase concerning this matter should be interpreted as though it read: "and upon the death *or remarriage* of said widows the interest of each shall descend to the heirs of the body of said sons in fee simple." (40 Cyc. 1399.)

For the sake of simplicity in statement all reference to the daughter's share will for the present be omitted. The testator clearly desired that each son should have a life interest in one-third of the property; that upon the death of each son his widow, if he left one, should have the use of that portion during her life or until she remarried; that the absolute title to it should be in the children of the testator's sons from the time their father died, unless he left a widow, and in that case, from the time she died or remarried. Whether or not this purpose was accomplished depends upon which of two methods the testator is deemed to have adopted in seeking to give it effect. If by the terms of the will no estate could vest in the children of either son who died leaving a widow until her death or remarriage, the rule against perpetuities was violated, because it might happen that the son would marry a woman born after his father's death, who would survive him more than twenty-one years. The improbability of such an occurrence does not affect the matter. "The Rule requires that future interests within its scope should vest within twenty-one years, exclusive of periods of gestation, after a life or lives in being. . . . It is not enough that the future interest may, or even that it will, in all probability, vest within the limits. It must necessarily so vest." (30 Cyc. 1482, 1483.) If, however, an estate would necessarily vest in such chil-

dren at or before the death of their father, the rule
was satisfied, no matter how long their possession and
enjoyment of the property might be postponed.    (30
Cyc. 1471, 1473; 22 A. & E. Encycl. of L. 721, 722;
*Gates v. Seibert,* 157 Mo. 254, 57 S. W. 1065, a case
somewhat like the present; Note, 49 Am. St. Rep. 126.)
The question for determination therefore is, When
would an estate vest in the children of one of the sons
under the circumstances stated?   If the actual and
obvious purpose of the testator was one which the law
does not permit to be carried out, the provision of the
will must fail.   But if the language is ambiguous, the
courts incline towards a construction favorable to the
early vesting of an estate in the children and against
a construction that would defeat the will.   (30 Cyc.
1498, 1499; 40 Cyc. 1650, 1651, 1666, 1667, 1677; 20
Dec. Dig., Wills, § 629.)

The will provides that "upon the death of said
widows the interest of each (that is, the share of each)
shall descend to the heirs of the body of said sons in
fee simple."   If the word "descend" is regarded as
used with technical accuracy, implying a devolution
of title by operation of the statute, the estate would
vest in the children upon their father's death.   For if
they take by inheritance they take from their father,
not from his widow, and at the time of his death, not
of hers.   But as used in wills, "descend" is often re-
garded as a general expression, equivalent to "go to"
or "belong to" (3 Words & Phrases, pp. 2012, 2013),
and as indicating a passing of title by the force of the
will rather than of the statute (3 Words & Phrases,
p. 2014).   Here the will provides in effect that upon
the death of a son his share shall be enjoyed by his
widow during her life or until she remarries, and that
upon the cessation of her interest the son's children
shall be the absolute owners; that is, it creates an
estate in the widow for life or during widowhood, with

a remainder to the son's children, and the question is as to when the children's estate was to vest.

There is room for a reasonable contention that the remainder was to vest at the death of the testator, if any children of his sons were then in being; if not, then as soon thereafter as any were born, subject in either case to open and let in those born later. (40 Cyc. 1675.) In *Ballentine v. Wood*, 42 N. J. Eq. 552, 9 Atl. 582, a will provided:

" 'It is further my will that, from and after the death of all my children, . . . the several tracts or parcels of land . . . shall go and descend . . . to the respective right heirs of my said children, in fee simple.' " (p. 557.)

The court said:

"By the words 'right heirs' . . . the testator meant children. . . . At the death of the last survivor of the testator's children the trust is to cease, and the property . . . shall go to the testator's grandchildren. The words 'and descend' are merely superfluous. The word 'descend' was used, not to express descent in the legal sense, but devolution by force of the devise. . . . The gift in remainder and the life estate vested at the same moment. The grandchildren who were alive at the death of the testator took the title to the remainder at his death by independent gift; . . . but the estate taken by the grandchildren at the testator's [death] was subject to the liability to open and let in grandchildren born subsequently . . . subject to that liability to open, it was vested at the death of the testator." (pp. 557, 558.)

If the remainder vested at the time of the testator's death, it was to be participated in by all the children of his sons who were then alive or who were born later. Otherwise the time of its vesting depended upon whether it was to be shared by the children who were in being when their father died, or only by those who survived their father's widow. (40 Cyc. 1674.) Unless an intention to the contrary clearly appears, the members of a class in case of a gift to heirs of the testator

are to be determined at his death. (40 Cyc. 1481.) Thus, in *Dove v. Torr,* 128 Mass. 38, a testator devised property to his daughters until their death or marriage, and provided that "after the marriage or death of my surviving daughter . . . the estate herein devised shall descend to those persons who may then be entitled to take the same as my heirs." It was held that the devise over was to those who were the heirs of the testator at the time of his death. This rule is the same when the heirs of other than the testator are referred to. "Where the gift is to the heirs or next of kin of another than the testator it ordinarily refers to the death of such other, unless the context of the will manifests that the class shall be determined at a different time." (40 Cyc. 1482, 1483; *Gardner v. Skinner,* 195 Mass. 164, 80 N. E. 825.) For this reason, we think that in the present case the testator must be regarded as intending that at least all children of his sons who survived their father should share in the remainder, whether or not they survived their father's widow.

"An estate is vested when there is a person in being who would have an immediate right to the possession of the property, upon the ceasing of some intermediate or precedent estate." (40 Cyc. 1648.) Instantly upon the death of one of the testator's sons, leaving a widow, the widow would take an estate for life (or until remarriage), and the persons would be in being—namely, the children of the deceased son—who would have an immediate right to the possession of the property upon the ceasing of the widow's estate. We therefore think that the children's estate would vest at the death of their father, and the rule against perpetuities was not violated.

A very similar situation was presented in *Gray v. Whittemore,* 192 Mass. 367, 78 N. E. 422. The scope of the decision on this point is fairly indicated by head-

note No. 9 to the case as published in the Northeastern Reporter:

"Testator's will directed his trustees upon the death of any of his sons to pay the son's share of income to his widow during her widowhood, and on the death of any daughter to pay her share of income to her surviving husband for life, and on the death of any child leaving no widow or husband, or the death of any surviving husband, or the death or remarriage of any such widow, to pay a proportionate share of the principal sum to the issue of the deceased's son or daughter. *Held,* that the rights of the issue vested in interest on the death of the children, subject only to the life estate of any surviving husband or wife."

In the course of the opinion it was said:

"It is a general rule of construction that, when the language used by a testator is of doubtful import, remainders will preferably be regarded as vested, unless a contrary intention is to be gathered from the provisions of the will. . . . And it is to be observed that all the limitations here in question are to the direct descendants of the testator; a circumstance which has been deemed to warrant the inference that vested, rather than contingent, remainders were intended to be created. . . . The rule is the stronger when the remainders limited would be void for remoteness if held to be contingent. . . . Accordingly, we are of the opinion that the remainders severally limited to the issue of Benjamin B. Whittemore, Joseph Whittemore, and Abby E. Ruggles vested in such issue at the decease of their parents, though the right of present possession was postponed in each case until the expiration of an intervening life estate. . . . Not only is this construction in accord with the manifest intent of the testator and effectual to accomplish the object which he had in view, but the opposite construction 'would defeat that purpose, by creating a perpetuity which the law would not sustain. In such a case, the court is bound to adopt that construction which will sustain the will and effectuate the objects of the testator.'" (pp. 377, 378.)

Even if some parts of the will should be held to violate the rule against perpetuities, it is questionable

whether the various provisions are so closely inter-
woven that none of them could be saved. (See, also,
Notes, 20 L. R. A. 509, and 3 L. R. A., n. s., 639.)

It is argued that if the widow of one of the testator's
sons should remarry, all her interest in the property
would at once cease, but the son's children would not
be entitled to possession until her death, according to
the terms of the will, and their remainder would there-
fore fail for want of a particular estate to support it.
The argument is answered by the interpretation al-
ready placed upon the language of the will, making
the right of possession accrue upon such remarriage.

The defendants maintain that the provision of the
will with respect to the interest of the testator's daugh-
er, Altha Moody, is void, because it must be construed
as vesting a title in the two sons at such indefinite
time in the future as her issue should become extinct.
Where a will directs a certain disposition of devised
property in case a life tenant shall "die without issue,"
at common law this is interpreted as meaning that
such disposition shall be made whenever the issue of
the life tenant shall become extinct, thus having the
effect to create an estate in fee tail. (40 Cyc. 1502.)
This rule, when not abrogated by statute, has been
generally but not universally followed in this country.
(3 Words and Phrases, pp. 2059, 2647.) It has, how-
ever, been characterized as an "absurd and unreason-
able perversion of the meaning of the words,"
(*Parish's Heirs v. Ferris and others,* 6 Ohio St. 563,
576), and as "exceedingly arbitrary, and without much
foundation in reason or common sense" (*Strain v.
Sweeny,* 163 Ill. 603, 606, 45 N. E. 201). Where the
courts feel constrained to follow it, they "seize hold
of slight circumstances to give to executory devises a
construction, which regards the failure of issue as re-
lating to a definite period of time (*Strain v. Sweeny,*
supra, 607; 40 Cyc. 1503.) Here there is no difficulty

in giving effect to the evident purpose of the testator, even allowing the common law rule its full operation. The language in question is: "If said daughter shall be survived by issue, her estate shall descend to such issue, but failing such issue, her estate shall descend to said sons"—the disposition thereafter being the same as in the case of their own shares. The words "failing such issue" if used alone might under the arbitrary rule of the common law be held to refer to an indefinite failure of issue. But the testator's purpose is made clear by the context. The phrase "if said daughter shall be survived by issue," can only mean if she shall have living issue at the time of her death. The subsequent words "failing *such* issue" as clearly refer to a failure of living issue at the time of the mother's death. Moreover, the fact that upon her death without issue the property was to go to her brothers sufficiently indicates that the immediate and not the future failure of issue was in the mind of the testator.

A further contention is made that even if the will is regarded as valid the petition is demurrable. We think it stated a cause of action for a rescission of the contract for the purchase of the land, although that relief is not in terms asked, and no offer of reconveyance was made. Such an offer might be implied from the prayer for the recovery of the purchase money, and a formal tender of a deed is not an absolute prerequisite to such an action. (*Thayer v. Knote,* 59 Kan. 181, 52 Pac. 433.) The petition was perhaps also sufficient, considered as one for the recovery of damages, although it is at least doubtful whether any facts were pleaded by which the amount of recovery could be accurately measured.

The judgment is reversed and the cause remanded for further proceedings in accordance herewith.