No. 22,681.

THE FONTRON LOAN & TRUST COMPANY, as Guardian of CARRIE R. BROWN, formerly CARRIE R. SALMON, et al., *Appellees*, v. HUGH SALMON, *Appellee*, and BIRDIE CROMER, *Appellant*.

SYLLABUS BY THE COURT.

WILL—*Interpretation—Interest of Surviving Widow After Her Remarriage.* A will by which a testator, who was survived also by several children, left all his property to his wife "for her use during the rest of her life, provided, she does not remarry," the language quoted being followed by this provision: "It is my will and wish that she be allowed the income from the said property only and at her remarriage or death, then the same shall be divided according to the laws of Kansas." *Held,* that upon its face the will is to be construed as meaning that upon the remarriage of the widow the property is to be distributed as though her husband had died intestate, she receiving half of it; and that the fact that for several years prior to the death of her husband she had been weak mentally is not a sufficient basis for interpreting the language used as showing a purpose on his part to deprive her of all interest in the property in the event of her marrying again.

53—106 KAN

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed May 8, 1920. Affirmed.

*Carr W. Taylor*, and *John H. Connaughton*, both of Hutchinson, and *Theodore B. Switzer*, of Macomb, Ill., for the appellant.

*C. M. Williams*, and *D. C. Martindell*, both of Hutchinson, for the appellees.

The opinion of the court was delivered by

MASON, J.: The controversy is over the interpretation of a will, the question at issue being whether in the event of the remarriage of his widow the testator intended that she should thereupon cease to have any interest whatever in his property, or (as found by the trial court) she should then take a half interest, the other half being shared equally among their children.

Isaiah Salmon died January 30, 1917, survived by his wife, five children, and Birdie Cromer, the daughter of a deceased child. His will, which was duly probated, and under which the widow elected to take, read as follows, omitting the introductory and concluding portions:

"First. It is my will wish and wish, and I hereby direct that the executor of this my last will and testament, shall as soon after my demise as convenient, and out of any money or personal property of which I may die seized and possessed, pay all of my just debts, last sickness and funeral expenses, and the costs of administration.

"Second. I hereby give, devise and bequeath to my beloved wife, Caroline B. Salmon, all of the real estate and personal property of which I may die seized, and to which I may be entitled at the time of my death, and wherever the same may be located, for her use during the rest of her life, provided, she does not remarry. It is my will and wish that she be allowed the income from the said property only and at her remarriage or death, then the same shall be divided according to the laws of Kansas.

"Third. To each of my children who are as follows: I leave the sum of one ($1.00) dollar each. Ira M.; Hugh; J. A.; G. A.; and Emma A. Kitch and to my granddaughter, Birdie Cromer, one ($1.00) dollar."

The widow remarried in September, 1918. For several years before the death of her first husband she had been weak mentally. On November 7, 1918, she was adjudged feeble-minded, and a guardian was appointed. On July 1, 1919, the guardian, four children joining with him, brought an action against the other child and the granddaughter, asking the partition of real

estate left by the testator, and a declaration that the widow was entitled to one-half of it, and the descendants to one-twelfth each. The granddaughter filed an answer claiming that the widow had no longer any interest in the property, and that she and the children owned one-sixth each. The case was submitted upon these facts, the court deciding in favor of the contention of the plaintiffs. The granddaughter appeals.

In behalf of the appellant it is argued that the application of the accepted rule that the court should give effect to the real purpose of the testator, as gathered from all parts of the will, considered in the light of the attendant circumstances, gives the following as the most reasonable interpretation: The husband and father, having in mind his wife's mental weakness, and realizing that because of that condition if she remarried no part of any property he might leave to her outright would ever be likely to return to any of their family, undertook to give her nothing more in any event than the income of the property, and to deprive her of that if it should be rendered unnecessary for her support by her remarriage.

The argument is not without plausibility. On the other hand, however, the language of the will is quite explicit that upon either her death or remarriage the property should be divided according to the laws of Kansas—the obvious meaning being that it should be divided according to the law of descents as applied to property owned by him at the time of his death. Where the disposition indicated should be occasioned by her death the whole would of course go to their children; but where the distribution should be occasioned by her remarriage one-half of it would as obviously go to the widow. It can hardly be assumed against the natural meaning of the language of the will that because the wife was weak mentally the husband intended to deprive her absolutely of any interest in his property the moment she was in a position to look elsewhere for support. Such an intention, if entertained, might so readily have been expressed that we do not think it should be read into the will by interpretation.

It is also urged in behalf of the appellant that the will created a life estate in the widow, with a remainder to the children, vesting at once and convertible into a full title either by her death or her remarriage. This, however, seems to be prac-

tically a restatement of the same proposition, its correctness depending upon what interpretation is placed upon the testator's expression of his purpose. The rule that in a doubtful case a construction should be preferred favoring an early vesting of a title—a vested rather than a contingent remainder—does not appear to us to be adapted to aid in the situation here presented. The appellant cites *Klingman v. Gilbert*, 90 Kan. 545, 135 Pac. 682. There a devise was made to the widow for life or until her remarriage, specific disposition being made of the property upon her death, but nothing being expressly stated as to what should become of it in the event of her remarriage. It was held that, in the absence of anything to indicate a contrary intention, it should be disposed of in the same way as though she had died. Here, however, the express provision is that if the widow remarries the property shall be divided according to the statute of descents.

The judgment is affirmed.