No. 33,687

MAMIE W. COLEMAN, *Appellant*, v. J. C. SHOEMAKER, Executor of the Estate of Fred B. Jordan, Deceased, et al., *Appellees.*

(78 P. 2d 905)

Opinion filed May 7, 1938.

*Robert H. Clogston*, of Eureka, and *D. W. Eaton*, of Wichita, for the appellant.

*Homer V. Gooing, Carl C. Chase, T. C. Forbes*, all of Eureka, and *Clifford Sullivan*, of Howard, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This action was commenced in the district court of Elk county by the daughter of the deceased testator against the executor and plaintiff's three children, asking for a judicial construction of her father's will and that she be adjudged and decreed to be the owner and holder of certain real and personal property described in the will by virtue of being devised an estate tail therein.

The trial court held the will did not create an estate tail in the plaintiff and that the deeds and transfers made for the purpose of breaking an entailment were ineffective, but that she, after the death of her mother, held an equitable estate for life, and that her children had a vested remainder as representatives of their class. The court further held that the will by implication made the executor a trustee of the entire estate for the benefit of a life tenant and the remaindermen, it being clearly evident the intention of the testator was to create a trust which was necessary to control and dispose of his property to accomplish his purpose. From the judgment so construing the will, plaintiff appeals.

A copy of her father's will was attached to the plaintiff's petition, and the portions thereof now under consideration are as follows:

"I hereby give, devise and bequeath all of my property, both real and personal of whatsoever kind and wheresoever situated to my beloved wife, Mary J. Jordan, to have and enjoy during the term of her natural life and at her death, the use, benefit and income from said property to be paid to my beloved daughter, Mamie Jordan Taylor, during the term of her natural life. At the death of the said Mamie Jordan Taylor I hereby give, devise and bequeath all of my property then remaining, both real and personal of every kind and character and wheresoever situated, in fee simple, to the living issues of the body of the said Mamie Jordon Taylor, if any there be.

"In the event [of] the said Mamie Jordan Taylor shall not be living at the time of the death of my beloved wife, Mary P. Jordan, but shall leave living issue, then and in that event my estate, both real and personal, shall pass to said living issue share and share alike, upon their becoming of age.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Should my executrix hereinafter appointed, or her successors, see fit at any time, I hereby authorize, direct and empower said executrix with the approval of the probate court to sell any of the property of my said estate, either real or personal, and execute proper conveyances therefor and to reinvest the proceeds therefrom in real-estate mortgages or municipal securities and the income from said investments shall pass and be distributed as hereinbefore provided."

An intervening paragraph spoke of the disposition the testator desired to be made of his property in the event his daughter should not

be living at the time of the death of his wife "nor leave any living issue of her body at her death."

The will at the time it was executed was accepted by the wife of the testator. It was executed on June 12, 1926, and the testator died on November 12, 1928. The will was admitted to probate November 27, 1928, and the wife was appointed executrix, which position she held until her death on February 11, 1929. On March 1, 1929, J. C. Shoemaker was duly appointed and qualified as executor.

The petition stated that at the time the will was executed the daughter was married but had no children, but one was born to her before the death of her father, and two since. They are, Wanda, Lee and Glen Taylor, who are defendants herein. The petition further stated that the plaintiff and her husband, on September 5, 1936, for a valuable consideration, conveyed the real and personal property to A. R. Karns, and that he, a single man, on September 8, 1936, for a valuable consideration reconveyed the same real estate and personal property to the plaintiff, and that both deeds were duly recorded in the office of the register of deeds of the county. Guardians *ad litem* were appointed for the three children and they filed an answer for the children, denying generally the construction placed upon the will by the plaintiff. The executor also filed a similar answer. Thereafter plaintiff filed replies in the form of general denials to each of these answers. On the trial the parties entered into a stipulation to the effect generally that the facts stated in the petition were true.

There is probably no legal question in this state that is more perplexing and confusing to our profession than that concerning estates tail. We have perhaps twenty-five or more decisions of this court construing wills and applying the law on this subject to the language used and circumstances prescribed in the wills, since the decision in the case of *Ewing v. Nesbitt,* 88 Kan. 708, 129 Pac. 1131, holding the doctrine of estates tail still exists in Kansas. The following are some of the definitions of estates tail recognized in Kansas:

"Estates tail are estates of inheritance which, instead of descending to heirs generally, go to the heirs of the donee's body." (21 C. J. 931.)

"An estate tail is where lands and tenements are given to one and the heirs of his body begotten." (10 R. C. L. 656.)

"An estate tail is an estate of inheritance which descends only to the heirs of the body of the donee or to some special class of such heirs." (Burdick on Real Property, p. 68.)

"An estate tail or fee tail is a freehold estate in which there is a fixed line of inheritable succession limited to the issue of the body of the grantee or de-

visee, and in which the regular and general succession of statutory heirs at law is cut off." (*Gardner v. Anderson, Trustee,* 116 Kan. 431, syl. ¶ 3, 227 Pac. 743; and *Houck v. Merritt,* 131 Kan. 151, 153, 289 Pac. 431.)

"A devise of land to a person for life and providing that upon the death of such person 'the fee title shall vest and become the property of the children born of the body' of such person, constitutes an estate tail which the tenant in tail may transform into an estate in fee simple by a conveyance." (*Davis v. Davis,* 121 Kan. 312, syl. ¶ 1, 246 Pac. 982.)

"A deed of land to a person for life and providing that 'if she leave surviving her children of her own blood, then said children shall at once become the owners of the land conveyed by this deed,' constitutes an estate tail which the tenant in tail may transform into an estate in fee simple by a conveyance." (*Lisman v. Marks,* 126 Kan. 344, syl., 267 Pac. 963.)

"The essential and distinguishing earmarks which denote the creation of an estate tail are an interference with and curtailment of the statutory rules pertaining to the descent and distribution of real estate and a limitation of the right of inheritance to the issue of the body of the grantee or devisee." (*Woodley v. Howse,* 133 Kan. 639, 640, 3 P. 2d 475.)

In the case of *Ewing v. Nesbitt,* supra, the will which provided "I will and bequeath to my daughter, Mary A. Nesbitt, *nee* Ewing, and to the heirs of her body (describing lands)" was held to create an estate tail.

From these definitions it will be observed readily that those who are to inherit after the death of the daughter, namely, the "issue of the body of the said Mamie Jackson Taylor, if any there be" come fully within the terms and requirements necessary to effect an estate tail as far as their designation and description are concerned. And since those who are to inherit are limited to the "issue of her body," as they are also described in the subsequent paragraph of the will, such will does not come within the restriction of our statute, G. S. 1935, 22-256, which affects only "heirs in fee or by words to that effect."

Appellees call our attention to the provision in the will that such heirs of her body are given the property then remaining after her death "in fee simple." In the case of *Davis v. Davis,* supra, the expression used in the will by the testator as to subsequent takers was, "It is my further will and bequest, that the fee title to the real estate . . . upon the death of my said granddaughter . . . shall vest and become the property of the children born of the body of the said (granddaughter)," and it was held to create an estate tail.

The term "in fee simple" was used in the deed in a similar connection in the case of *Somers v. O'Brien,* 129 Kan. 24, 281 Pac. 888, it being therein stated that at the death of the daughter the property

conveyed to her was to go "in fee simple" unto the issue of her body, and it was held:

"The grant is to her for life and 'at her death in fee simple unto the issue of her body'—the founding of a line of inheritance of the grantors' own choosing at variance with the mode of intestate succession prescribed by statute. It is therefore an estate tail." (p. 28.)

In the case of *Houck v. Merritt*, 131 Kan. 151, 289 Pac. 431, the will devised the property to the daughter "to her own use during her natural life and at her death to her children, the issue of her body, in fee simple forever," and the will was held to have created an estate tail.

In 1 Tiffany on Real Property, 2d ed., a fee-simple estate is thus defined: "An estate in fee simple is an entire interest and property in the land," and the author follows that definition with the following distinction:

"While the words 'fee simple,' or 'fee simple absolute,' are ordinarily used to distinguish a fee-simple estate from other estates of inheritance, hereafter discussed, such as 'fee tail' or 'determinable fee,' the word 'fee' alone, without any qualifying words, serves to designate a fee-simple estate, and is not infrequently used in that sense." (p. 44.)

" 'An estate in fee simple is where a man has an estate in lands or tenements to him and his heirs forever.' A fee simple is the greatest interest and the most absolute in the rights conferred that one can have in real property." (1 Thompson on Real Property, p. 781.)

"A tenant in fee simple is one who has lands or tenements to hold to him and his heirs forever. A fee, in general, signifies an estate of inheritance, and a fee simple is an absolute inheritance, clear of any condition, limitation, or restriction to particular heirs. It is the highest estate known to the law, and necessarily implies absolute dominion over the land." (10 R. C. L. 649.)

"A tenant in fee simple is he that hath lands, tenements, or hereditaments, to hold to him and his heirs forever; generally, absolutely and simply, without mentioning what heirs, but referring that to his own pleasure, or to the disposition of the law." (21 C. J. 918.)

The very use of this term "fee simple" is contrary to such inheritance being subordinate to others and was undoubtedly intended by the testator to be an absolute and complete estate of inheritance in such parties, namely, the issue of the body of Mamie Jordan Taylor.

In the Somers and Houck cases, where the term "in fee simple" was used as to the character of the estate which those taking in remainder would inherit under the terms of the wills, and also in the Davis case, where the term used in the same connection was "the fee. title," these terms do not seem to have been especially or separately considered in those opinions nor to have been made in any way the

basis of the rulings which in fact ignored or minimized their usual or ordinary meaning and significance, the decision being made entirely upon other language in the wills justifying the conclusions reached. For this reason the rulings in those cases are not as persuasive as to the meaning and effect of these expressions as appellant insists. The will in the case of *Meyer v. Meyer*, ante, p. 664, 78 P. 2d 910, contained the words "in fee simple" in a similar connection, and in the opinion handed down in that case this month, it is held that the will did not create an estate tail.

Two other reasons are given in support of the ruling of the trial court that the interest held under the will in this case by the first taker was not an estate tail. The first is that the limitation over is upon a definite failure of issue. A time is definitely fixed for the possibility of such failure, viz., at the death of Mamie Jordan Taylor, and also in a subsequent paragraph of the will it outlines a possible situation where Mamie might die before her mother and might not "leave any living issue of her body at her death." This, too, definitely fixes the time as to the failure of issue at her death. Both expressions make her death the time when the failure of issue of her body shall be determined. The case of *Berthoud v. McCune*, 130 Kan. 634, 287 Pac. 904, was very similar in this respect, and it was there held:

"A testator devised certain real estate to his granddaughter to be held for her sole use during her natural life and then to go in fee simple to the issue of her body living at the time of her death, and if she died leaving no living issue of her body, then to go in fee simple to such half brothers and half sisters as may be living at the time of her death, but, if she died leaving no half brothers or half sisters, the property should go to the children of the testator. The granddaughter claimed that the will gave her an estate tail in the property. *Held,* that as the limitation over is upon a definite failure of issue, that is, upon the death of the granddaughter, an estate tail was not created." (Syl. ¶ 1.)

In the case of *Burnworth v. Fellerman*, 131 Kan. 186, 289 Pac. 433, a will was considered wherein property was devised to a daughter in trust for the heirs of her body, either children or grandchildren, if any, to take in equal shares, providing that if the daughter died without any child or children of her body surviving her, then after her death it should become the absolute property of the children of the brother of the testator, and it was held that the devise did not create an estate tail, because a failure of issue was definitely fixed by the testator as of the time of the death of the first taker, the daughter.

It is said in 10 R. C. L. 657:

". . . if it appears that the limitation over was not postponed until an indefinite failure of issue, but on failure of children only, or on failure of issue within a given time, the estate will not belong to the class known as estate tail." (See, also, *Klingman v. Gilbert,* 90 Kan. 545, 135 Pac. 682.)

The second reason assigned why the provisions of the will under consideration do not create an estate tail is because no bequest as to either the real or personal property was made to the daughter: She was given only "the use, benefit and income from the property" after her mother's death and the executor was put in charge of the property with authority to sell the same and reinvest the proceeds therefrom, and the income therefrom was to pass and be disposed of as provided by the will. This provision would prevent the first-named beneficiary from ever having had any title or ownership of any of the property which she could convey. This matter was considered in the case of *Grossenbacher v. Spring,* 108 Kan. 397, 195 Pac. 884, and it was there held:

"Where an estate is devised in trust and active duties are imposed upon the trustee thereof for the proper execution of the trust, and the interest of the beneficiaries therein is specifically limited to the net income of the trust estate, which is to be paid to them annually during their lives, and after the death of the last survivor of them the remainder estate is to be divided between the heirs of their bodies, such testamentary disposition of property does not create an estate tail which can be broken by a conveyance." (Syl. ¶ 2.)

It was held in the case of *Johnson v. Coolbaugh,* 109 Kan. 597, 201 Pac. 59, that—

"A trust created by a will imposed upon the trustee the power and responsibility of paying to the widow of the testator so much of the income from real estate as might be necessary for her support during her life, and at her death the income was to be paid to a son during his life, and if he left children surviving him, then at his death, the income was to be paid to them for a period of twenty years, at which time the fee title was to vest in them. *Held,* that the trust is an active and not a dry or passive one, and that it cannot be executed until the time arrives for the final distribution (*Grossenbacher v. Spring,* 108 Kan. 397, 195 Pac. 884), and *further held,* that the only interest acquired in the real estate by the testator's son is a life use of the income from the time of his mother's death." (Syl.)

The language of the will plainly by implication made the executor a trustee of the entire estate for the benefit of the life tenant and remaindermen, it being clearly evident that the testator intended to create a trust which was especially necessary to control and dispose of the personal property.

It is said in the Restatement of the Law of Property, section 200:

"When a will creates successive interests in a thing other than land 'and such will is reasonably susceptible of the construction that the executor of such instrument is to become trustee of the thing for the benefit of the owners of such interests, then a trust is created."

It was also stated in 69 C. J. 709:

"The question of whether a trust has been created in a will is largely one of intention, to be determined from the whole will and the surrounding circumstances."

In the case of *Phoenix Mutual Life Ins. Co. v. Nevitt*, post, p. 772, 78 P. 2d 913, which is being handed down this month, it was held:

"Where the income from real estate is devised to certain parties for life and it is provided that these parties may sell the real estate from time to time and invest the proceeds in securities and at the death of the last survivor of these parties the remaining personal property and real estate shall go to the bodily heirs of the named parties, the will does not create an estate tail that can be terminated by conveyance." (Syl. ¶ 3.)

The appellant insists that the rule with reference to estates tail is different with personal property, and that her mother, under the terms of this will, became the owner of and entitled to all the personal property on the death of her husband; and that since the mother died intestate, leaving the appellant as her only heir at law, the appellant is now the owner of all the personal property by inheriting it from and through her mother. To this argument we cannot agree, as the personal property was mentioned in the will and directions were given the executor as to disposal thereof for the benefit of the beneficiaries under the will.

We conclude that the trial court was correct in its ruling that the will in this case did not create an estate tail and that the will by implication made the executor a trustee of both real and personal property for the benefit of the daughter and the issue of her body at the time of her death.

The trial court allowed each of the two guardians *ad litem* a fee of $250 to be paid, together with the costs in the trial court, out of the corpus of the estate. Appellant objects to this order, especially as to the fund from which it was ordered to be taken. This is purely a matter of discretion, and we think for the best interests of all concerned that it was a very wise choice.

Application has been made in this court for a further allowance to these two guardians *ad litem* for the services they have performed in

the appeal, and we have decided to allow each of them the sum of $125 which, together with the costs in this court, shall be paid out of the corpus of the estate.

The judgment is affirmed.