No. 34,393

W. H. Foster, *Appellee,* v. Richard Henry Stowers et al., *Appellants.*

(95 P. 2d 343)

Opinion filed November 10, 1939.

*C. E. Beymer,* of Lakin, for the appellants.

*Wm. Easton Hutchison, C. E. Vance* and *A. M. Fleming,* all of Garden City, for the appellee.

The opinion of the court was delivered by

Thiele, J.: This was an action to quiet title. Defendants appeal from an order overruling their demurrer to plaintiff's petition.

The petition alleged that prior to July 12, 1922, John T. Kerfoot owned the involved real estate, and on the above date he and his wife conveyed the real estate to their daughter, Virginia Nell Kerfoot, by warranty deed, a copy of which was made part of the petition; that thereafter Virginia Nell Kerfoot married one Henry Stowers. The defendants are their children. The children were born prior to October 27, 1936, on which date Virginia Nell Kerfoot Stowers and her husband conveyed a part of the land to Ethel M.

Beymer by warranty deed. On December 14, 1938, Mrs. Stowers and her husband conveyed the remainder of the land to Phillip Shell. By subsequent conveyances the plaintiff became the owner of the entire tract. Plaintiff alleged that the defendants, the children of Virginia Nell Kerfoot Stowers, claimed some interest in the real estate, and that such claims constituted a cloud on his title, and he prayed that his title be quieted as against the defendants.

The deed above mentioned is abstracted as follows: In the caption the grantors are John T. Kerfoot and Elsie V. Kerfoot, his wife, and the grantee is "Virginia Nell Kerfoot, daughter of the grantors." The granting clause recites that the first parties grant and convey "unto said party of the second part, during her life" certain described real estate. Immediately following the description is the following statement:

"The intention of this deed is, That the said Virginia Nell Kerfoot shall have a life estate in the property hereby conveyed, and after her death the heirs of her body shall share equally in the said property."

The habendum clause is:

"To have and to hold the same, . . . to the said party of the second part during her life and after her death to the heirs of her body in equal shares."

In the warranting clause the grantors covenant they will warrant and defend "unto said party of the second part, during her life, and after her death to the heirs of her body in equal shares."

The gist of appellants' contention is that the above deed gave the grantee a life estate only, with a remainder in the heirs of her body, here the defendants, and that they have an interest in the real estate which cannot be cut off by the action to quiet title. Appellee contends that the deed created an estate tail in Virginia Nell Kerfoot and her subsequent deeds cut off the entailment and vested a fee-simple title in his grantees.

Appellant places some reliance on *Meyer v. Meyer*, 147 Kan. 664, 78 P. 2d 910, wherein it was held:

"A devise to A for life, with remainder in fee simple to the heirs of the body of the life tenant, creates a life estate with a contingent remainder, and not a fee tail." (Syl.)

After that opinion was filed, a rehearing was allowed, as a result of which the court concluded that the above ruling was contrary to the established rule in this state, and should not stand. In the opinion on the rehearing, *Meyer v. Meyer*, 149 Kan. 23, 86 P. 2d

493, a review of some of our decisions was made, and it was said they had established a rule of property in this state, and it was held that:

"A devise to A for life, remainder in fee simple to the heirs of his body, creates a fee-tail estate in A."

A résumé of the history of estates tail may be found in *Ewing v. Nesbitt*, 88 Kan. 708, 129 Pac. 1131, and reference to the efforts made to abolish such estates in Kansas may be found in *Gardner v. Anderson, Trustee*, 116 Kan. 431, 227 Pac. 743. In the last case an estate tail was defined:

"An estate tail or fee tail is a freehold estate in which there is a fixed line of inheritable succession limited to the issue of the body of the grantee or devisee, and in which the regular and general succession of statutory heirs at law is cut off." (Syl. ¶ 3.)

This definition has been followed in subsequent cases. (See *Woodley v. Howse*, 133 Kan. 639, 3 P. 2d 475; *Brann v. Hall*, 141 Kan. 749, 43 P. 2d 229.)

Appellants have cited a number of cases in which an apparently contrary result was reached. All may be distinguished from the instant case. In *Klingman v. Gilbert*, 90 Kan. 545, 135 Pac. 682, language in a will was construed. Assuming it open to a contention an estate tail was created, no such contention was made, nor does the opinion discuss such an estate. The contention was whether a disposition was obnoxious to the rule against perpetuities. In *Miller v. Miller*, 91 Kan. 1, 136 Pac. 953, a deed was made to a son for life, remainder to his wife under certain conditions and remainder in fee to the heirs of his body. The father filed the deed for record. The son refused to accept. Later the father sought to cancel the deed. It was held refusal of the son to accept the deed did not accelerate the remainder and that recording of the deed by the grantor made it effective to all persons who did not dissent. The question of whether the deed might have created an estate tail was not raised, was not discussed and was not decided. In *Grossenbacher v. Spring*, 108 Kan. 397, 195 Pac. 884, it was held the will created an active trust, vested the title in trustees and did not create an estate tail in the beneficiary grandchildren. In *Browne v. Boone*, 129 Kan. 786, 284 Pac. 436, there was specific provision that the life-tenant devisee in the will and the life-tenant grantee in the deed should have no power of alienation. In *Berthoud v. McCune*, 130 Kan. 634, 287 Pac. 904, it was held that the limitation over was upon

definite failure of issue and an estate tail was not created for that reason, and a similar result was reached in *Burnworth v. Fellerman,* 131 Kan. 186, 289 Pac. 433. In *Brann v. Hall,* supra, the language used did not cut off the regular and general succession of the statutory heirs. In *Coleman v. Shoemaker,* 147 Kan. 689, 78 P. 2d 905, a trust was also held to have been created. In that case is a review of some of our cases to which reference is made.

Under our decisions there is no doubt but that the words used in the deed before us were appropriate to and did create an estate tail. The demurrer admits the execution and delivery of warranty deeds by the grantee. The legal effect of those latter deeds was to cut off the entailment. It follows that appellants' contentions they were possessed of interests in the lands cannot be sustained.

It may be observed that the provisions of Laws of 1939, chapter 181, section 2, that the rules of the common law pertaining to estates tail shall not be applied in this state, apply only to instruments becoming effective after the effective date of the act.

The judgment of the lower court is affirmed.

ALLEN, J. (concurring specially): In *Meyer v. Meyer,* 149 Kan. 23, 86 P. 2d 493, a limitation to a person for life with remainder in "fee simple to the heirs of his body" was held to create a fee-tail estate in the first taker. The case received careful consideration and the point should be at rest in this state. The rule there adopted should be applied to all cases that fairly fall within the ambit of that decision. For the reasons to be stated, I think the limitation in the instant case falls within the rule there adopted.

By the property act, chapter 181, Laws of 1939, effective July 1, 1939, estates tail are abolished. All instruments effective before that date will be construed by the common law; those effective after that date may depend upon a construction of that act. As these questions will engage the attention of lawyers for years to come, we may well pause to evaluate the decision in the Meyer case as well as the instant case.

The case of *Jesson v. Wright,* 2 Bligh 1, decided by the House of Lords in 1820, is the leading case on the construction of the Rule in Shelley's Case. In that case a testator had devised land to his nephew William for and during the term of his natural life and after his death "unto the heirs of the body of the said William, son of my sister, Ann Wright, lawfully issuing, in such shares and proportions as he the said William shall" by deed or will "give, direct, limit or

appoint, and for want of such gift, direction, limitation or appointment, then to the heirs of the body of the said William, son of my said sister, Ann Wright, lawfully issuing, share and share alike, as tenants in common, and if but one child, the whole to such only child, and for want of such issue" then to other persons.

The case was argued by the leading lawyers of England, and the court stated that "no case was ever better argued at this bar."

It will be observed the life tenant had power to appoint to the heirs of his body. As the heirs of his body embraced all his descendants in succession forever, it was argued that by "heirs of his body" the testator meant "children." The court held that the power to appoint did not repel the application of the Rule in Shelley's Case.

If we eliminate the power, the limitation was, in effect: "to William Wright for life, and after his death to the heirs of his body, share and share alike, as tenants in common, and if but one child, the whole to such child, and for want of such issue," then to other persons.

On this point it was argued that since the issue of the life tenant—descendants of all generations—could not take share and share alike, nor as tenants in common, the use of such words disclosed a clear purpose to create a remainder in his children, or in such of his issue as might be living at his death. It was further suggested that the subsequent clause "and if but one child, the whole to such only child," clearly showed that "heirs of his body" was not used in its primary sense.

The lower court held William Wright took only a life estate, but this judgment was reversed. In the opinion of Lord Redesdale, it was said:

"There is such a variety of combination in words, that it has the effect of puzzling those who are to decide upon the construction of wills. It is therefore necessary to establish rules, and important to uphold them, that those who have to advise may be able to give opinions on titles with safety. From the variety and nicety of distinction in the cases, it is difficult, for a professional adviser, to say what is the estate of a person claiming under a will. It cannot at this day be argued that, because the testator uses in one part of his will words having a clear meaning in law, and in another part other words inconsistent with the former, that the first words are to be canceled or overthrown. . . . It is dangerous, where words have a fixed legal effect, to suffer them to be controlled without some clear expression, or necessary implication. In this case it is argued that the testator did not mean to use the words 'heirs of the body,' in their ordinary legal sense, because there are other inconsistent words; but it only follows that he was ignorant of the effect of the one or of the other. . . . The rule is, that technical words shall have their legal effect,

unless, from subsequent inconsistent words, it is very clear that the testator meant otherwise. . . . It has been argued that heirs of the body cannot take as tenants in common; but it does not follow that the testator did not intend that heirs of the body should take, because they cannot take in the mode prescribed. This only follows, that, having given to heirs of the body, he could not modify that gift in the two different ways which he desired, and the words of modification are to be rejected. . . ." (pp. 56, 57.)

The rule laid down in this case is that the technical words "heirs of the body" must be given their legal effect unless from subsequent inconsistent words, or explanatory words, it is clear beyond all question that the testator meant otherwise. In the subsequent case of · *Jordan v. Adams*, 9 C. B. (N. S.) 483, decided in 1861, the rule was thus stated by Cockburn, C. J.:

"When once the donor has used the terms 'heirs,' or 'heirs of the body,' as following on an estate of freehold, no inference of intention, however irresistible, no declaration of it, however explicit, will have the slightest effect. The fatal words once used, the law fastens upon them, and attaches to them its own meaning and effect as to the estate created by them, and rejects, as inconsistent with the main purpose which it inexorably and despotically fixes on the donor, all the provisions of the will which would be incompatible with an estate of inheritance, and which tend to show that no such estate was intended to be created; although, all the while, it may be as clear as the sun at noonday that by such a construction the intention of the testator is violated in every particular. . . . But although the rule thus established is inflexible to the extent I have stated, there is, nevertheless, one quarter from which it permits light to be let in and effect to be given to the real intention of the testator: this is where by some explanatory context, having a direct and immediate bearing upon the term 'heirs,' or 'heirs of the body,' the devisor has clearly intimated that he has not used these words in their technical, but in their popular sense, namely, that of sons, daughters, or children, as the case may be. An illustration of this branch of the rule is given by Lord Brougham in his judgment in *Fetherston v. Fetherston*, 3 Cl. & F. 67: 'If there is a gift to A and the heirs of his body, and then, in continuation, the testator, referring to what he had said, plainly tells us that he used the words "heirs of the body" to denote A's first and other sons, then clearly the first taker would only take a life estate.'" (p. 499.)

In the present case the deed stated that "The intention of this deed is, that the said Virginia Nell Kerfoot shall have a life estate" and that the "heirs of her body shall share equally" in the property. As "heirs of her body" includes her descendants in all time to come, they could not share equally. In the Meyer case we have, in effect, adopted the doctrine of *Jesson v. Wright*. The inflexible rule there announced was agreeable to wishes of the landed aristocracy intent upon the perpetuation of family names and estates. There is no conceivable reason why we should disregard the plain intention of

the testator in this state. By adopting this ironclad rule, we disappoint the intent of the testator, and permit the life tenant not only to destroy the reversion in the heirs of the testator—a vested interest—but to deprive the children of the life tenant of their expectancy. This is a harsh rule and has little to commend it.

The majority opinion comments on certain of our former opinions where the remainder contained the words "heirs of the body," and where it was held that only a life estate was created. The effect of those decisions was to repudiate the hard and fast rule of *Jesson v. Wright* that the technical words "heirs of the body" strike from the will any context not explanatory of such words. We now return to the inflexible rule, and in such cases disregard the manifest intention of the testator.

The word "issue" is a more flexible word than "heirs of the body," hence a gift to "issue," after a life estate, with like superadded words might be construed to create a life estate with a remainder instead of an estate tail. It would not fall within the rule here adopted.

The opinion states that in two of our former opinions it was held that a trust was created. As the Rule in Shelley's Case applies in all cases where both the life estate and the remainder are legal, or where both the life estate and remainder are equitable (see note on the Rule in Shelley's Case, 29 L. R. A., n. s., 1021), the force of the statement that in certain cases a trust was created is not apparent.