No. 34,999

A. W. JONAS, *Appellee,* v. MARY B. JONES, *Appellee* (HORACE W. JONES et al., *Defendants*), W. S. NORRIS and MAY NORRIS, His Wife, *Appellants.*

(109 P. 2d 211)

Opinion filed January 25, 1941.

*W. S. Norris, Wint Smith* and *Homer B. Jenkins,* all of Salina, for the appellants.

*C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger, E. S. Hampton, R. E. Haggart* and *Forest J. Horton,* all of Salina, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to foreclose two real-estate mortgages on the same city lot. One of the mortgages was given by holders of a contingent interest and only as additional security. Plaintiff, A. W. Jonas, prevailed, and only the defendants, W. S. Norris and May Norris, his wife, appeal. May Norris is interested only by reason of her marital relation to W. S. Norris and we shall refer to W. S. Norris as appellant.

Appellant was not one of the mortgagors. He claims to have purchased, prior to the execution of the mortgages, a contingent interest in the land in an attachment suit which he instituted against one of the sons of Mary B. Jones, the principal mortgagor. He contends the trial court erred in granting appellee, the mortgagee, a first, prior and paramount lien upon the interest he claims.

The instant action was tried upon a lengthy agreed statement of

facts. It will be necessary to state only a few of the facts. The real issue involves the construction of a deed which was executed in 1914 by the parents of Mary B. Jones to "Mary B. Jones, and her living issue." Other pertinent provisions of the deed, which determine the estate or interest conveyed to the grantees, will be considered presently. At the time the deed to the land in question, a lot in the city of Salina, was executed and delivered to Mary B. Jones, Mary B. Jones had, and now has, two adult sons, Horace W. Jones and Walter H. Jones.

In 1928, appellant brought an action for money judgment against Walter H. Jones, and attached a contingent interest he claimed Walter H. Jones had in and to the lot in question. That interest was sold in the attachment action. The sale was confirmed and pursuant to court order a certificate of sale was delivered to appellant on July 19, 1930. The certificate was recorded on the same day in the office of the register of deeds of Saline county. On the date appellant filed his attachment action he also filed in the office of the register of deeds of Saline county, a notice of *lis pendens*. The notice was promptly recorded and recited the interest appellant claimed in the attachment action to the lot in question under the deed to "Mary B. Jones and her living issue." No redemption was made of the interest appellant purchased and after eighteen months had expired and on September 15, 1932, appellant received and recorded his sheriff's deed to that interest.

After appellant had received his certificate of sale to the alleged interest of Walter H. Jones to the lot in question, Mary B. Jones, on August 12, 1931, executed her note and mortgage on the lot to appellee. On the same day and as additional security appellee received from Horace W. Jones and Floy D. Jones, his wife, and Walter H. Jones, a single man, their mortgage on the same lot. The mortgages became in default and on June 30, 1939, the instant foreclosure action was filed. The pertinent provisions of the deed which determine the estate or interest of the grantees, the mortgagors in the instant action, were as follows:

"This indenture, made this 16th day of December A. D. 1914, between William Hoard and Isabella Hoard, his wife, of Saline county, in the state of Kansas, of the first part, and Mary B. Jones and *her living issue* of Saline county, in the state of Kansas, of the second part.

"Witnesseth, that the said parties of the first part, in consideration of the sum of one dollar and love and affection (dollars), the receipt whereof is hereby acknowledged, do by these presents grant, bargain, sell and convey

subject to the reservation hereinafter contained, unto said Mary B. Jones for and during her natural life and in fee to the issue of her body *living at her death and their heirs and assigns,* all that tract and parcel of land situated in the county of Saline and state of Kansas, to wit: The south twenty-five (25) feet of lot one hundred forty-eight (148) and the north nine (9) feet of lot one hundred fifty (150) on Santa Fe avenue in the city of Salina, Kansas, according to the original plat thereof now on file in the register of deeds office of said county.

"The grantor, William Hoard, reserves the use, control and income of said real estate for and during his natural life and agrees to pay all taxes to be assessed thereon during said period."

On April 29, 1930, after judgment had been rendered in favor of appellant in his attachment action and the judgment had been made a lien upon the interest of Walter H. Jones in and to the lot, Mary B. Jones executed and delivered to Velma M. Moorman her warranty deed to the lot. On May 13, 1930, the latter conveyed by warranty deed to Mary B. Jones. Both of the last-mentioned deeds were recorded on the dates they were executed.

The trial court concluded: The deed of December 16, 1914, from the Hoards to Mary B. Jones, created an estate tail in Mary B. Jones; the entailment was broken by the deed from her to Velma M. Moorman; when title to the lot was reconveyed to Mary B. Jones the latter acquired the fee title and the mortgage which Mary B. Jones executed to A. W. Jonas, appellee, constituted a first and prior lien on the lot.

Appellee does not contend there was any defect or irregularity in the attachment proceedings. He relies wholly upon the construction placed by the trial court upon the deed to Mary B. Jones.

Did that deed create an estate tail in Mary B. Jones? The general subject of what constitutes estates tail, under the decisions of this court, has received extensive reconsideration in the last few years, and it is unnecessary to again cover the entire field. Some of the definitions of estates tail which have been recognized in this state were collected and may be found in *Coleman v. Shoemaker,* 147 Kan. 689, 691-692, 78 P. 2d 905. We pause to note only a few of them. In *Gardner v. Anderson, Trustee,* 116 Kan. 431, 227 Pac. 743, such estates were defined as follows:

"An estate tail or fee tail is a freehold estate in which there is a fixed line of inheritable succession limited to the issue of the body of the grantee or devisee, and in which the regular and general succession of statutory heirs at law is cut off." (Syl. ¶ 3.)

In *Woodley v. Howse*, 133 Kan. 639, 3 P. 2d 475, it was said:

"The essential and distinguishing earmarks which denote the creation of an estate tail are an interference with and curtailment of the statutory rules pertaining to the descent and distribution of real estate and a limitation of the right of inheritance to the issue of the body of the grantee or devisee." (p. 640.)

In the course of the last opinion it was declared:

"Where the grantor has selected a line of inheritable succession for his property it must continue so long as posterity endures in a regular order and course of descent. He may, of course, provide for the disposition of the property on an indefinite failure of issue, but if this is attempted on a definite failure, such as at the time of the death of the devisee named or other fixed time, the estate tail fails." (p. 642.)

In *Brann v. Hall*, 141 Kan. 749, 43 P. 2d 229, the foregoing definitions and comment from the Woodley and Gardner cases were applied to a devise, which in substance read:

"I hereby give and devise unto my son, . . . a life estate only in . . . ; after the death of my said son . . . I give and devise unto the lawfully begotten issue of my said son . . . then living all of the said real estate to take share and share alike, *and to their heirs and assigns forever,*" etc. (Italics ours.)

It was held the devise did not create an estate tail and it was said:

"The testator did, in part, select a fixed line of inheritable succession limited to the issue of the body of his devisee, but by express inclusion, he then provided that the heirs and assigns of the devisee were to take, and thus the regular and general succession of the statutory heirs at law was not cut off. Under the terms of the devise, the line of inheritable succession in the selected line could not continue so long as posterity endures in the regular course of descent, for the testator has provided otherwise, and for that reason no estate tail in the first taker was created. The result is that the devisees named as taking life estates took life estates and no more, the remainders going to the issue and the heirs and assigns of such issue of the respectively named devisees of the life estates." (p. 752.)

What was said in, the Brann case applies with equal force in the instant case. Numerous other cases to the same effect might be cited. Many of them were reviewed in *Coleman v. Shoemaker,* supra.

An estate tail in the first taker, Mary B. Jones, must fail for another reason. From the italicized provision contained in the granting clause of the instant deed, it will be observed the limitation over is upon a definite failure of issue. A time is definitely fixed for the possibility of such failure, namely, at the death of Mary B.

Jones. That expression in the deed makes her death the time when failure of issue of her body shall be determined. It prevented the grant from constituting a fee tail estate in Mary B. Jones. (*Berthoud v. McCune*, 130 Kan. 634, 287 Pac. 904; *Burnworth v. Fellerman*, 131 Kan. 186, 189, 289 Pac. 433; *Coleman v. Shoemaker*, supra, p. 694.) The provision in the deed that the fee title should go to the heirs of the issue of her body living at her death, was likewise inconsistent with the theory of a fee tail estate. (*Coleman v. Shoemaker*, supra.)

From a memorandum opinion it appears the decision of the trial court that a fee tail estate was created in Mary B. Jones, was based principally upon *Meyer v. Meyer*, 149 Kan. 23, 86 P. 2d 493 (last opinion on rehearing in the Meyer case), and *Foster v. Stowers*, 150 Kan. 599, 95 P. 2d 343. They are not authority for the decision that a fee tail estate was created in the instant case. In the Meyer case a life estate was created in Henry Meyer and at his death the will devised the real estate in fee simple to the *heirs of his body*. The Foster case was a deed case. The pertinent provision in the deed was a declaration of the grantor's intention that the grantee "shall have a life estate in the property hereby conveyed, and after her death the *heirs of her body* shall share equally in the said property." It was held an estate tail was created in the grantee. It would appear the trial court, in the instant case, ignored or misinterpreted the effect of the italicized portion of the grant, to wit: "living at her death and their heirs and assigns."

Appellee reminds us the rule in Shelley's case, in this state, had been abolished only as to wills and not as to deeds when the instant deed was executed. He also states the new law abolishing that rule is not operative as to deeds executed prior to enactment of the new law. That is true. (G. S. 1939 Supp., 58-502.)

Appellee further contends if Mary B. Jones was not granted a fee tail estate she nevertheless obtained a fee title absolute under the rule in Shelley's case. In support of that contention he cites *Kirby v. Broaddus*, 94 Kan. 48, 145 Pac. 875, where we held:

"The rule in *Shelley's case*, except as applied to wills, is a part of the common law of this state, and therefore a deed to a named grantee for life, with a provision that at his death the title shall vest in his heirs, enables him to make an effective conveyance of the fee." (Syl.)

The trouble with the contention is the deed in the instant case did not convey a life estate to Mary B. Jones with remainder to

her heirs. It conveyed the fee to the issue of her body *living at her death and their heirs and assigns*. Under such a provision, Mary B. Jones could not be held to possess an absolute fee even though the words employed in the instant deed had been employed in a will, and in a jurisdiction in which the rule in Shelley's case was operative. In a well-reasoned early case upon that subject the supreme court of Pennsylvania in *Taylor v. Taylor*, 63 Pa. St. 481, said:

"It is a position not open to dispute, then, that if it appears, either by expression or by clear implication, that by the word 'issue' the testator meant 'children' or issue living at a particular period, as at the death of the first taker, and not the whole line of succession, which would be included under the term 'heirs of the body,' it must necessarily be construed to be a word of purchase; and the rule in Shelley's case can have no application." (p. 484.)

The same rule has been asserted frequently in later decisions. (*Lee v. Sanson*, 245 Pa. St. 392, 91 Atl. 611.)

The contingent interest of Walter H. Jones was subject to sale on execution. (*Thompson v. Zurich State Bank*, 124 Kan. 425, 428, 260 Pac. 658; *Koelliker v. Denkinger*, 148 Kan. 503, 83 P. 2d 703; *Kimberlin v. Hicks*, 150 Kan. 449, 452, 94 P. 2d 335.) Appellant purchased that interest. He had a certificate of purchase covering the interest when the instant mortgages were executed. His certificate ripened into a deed when redemption was not made. Appellee's mortgages, therefore, did not constitute a first, prior and paramount lien upon the contingent interest formerly held by Walter H. Jones and now held by appellant, but only upon the interest of the defendant mortgagors, Mary B. Jones and Horace W. Jones. It follows the court erred in foreclosing the mortgage as to the contingent interest held by appellant. To the extent indicated the judgment must be reversed. It is so ordered.

ALLEN, J., concurs in the result.